TEXAS EMPLOYERS' INS. ASS'N v. BOUDREAUX et al. (No. 467.)

(Court of Civil Appeals of Texas. Beaumont. May 31, 1919. Rehearing Denied June 18, 1919.)

1. MASTER AND SERVANT ⬰417(9)—COMPENSATION ACT—AWARD IN GROSS—TRIAL DE NOVO ON APPEAL.

Under Compensation Act, pt. 1, §§ 8a, 15, 18, providing that compensation shall be paid weekly, except that Industrial Board may redeem liability by payment in gross where manifest injustice would result from weekly payment, district court, on review of an award of weekly compensation, trying case de novo, as provided by Vernon's Ann. Civ. St. Supp. 1918, art. 5246, may give a gross award in case of death of employé having wife and two children of scholastic age, and no earning capacity, award for whom would amount to but $7.44 a week.

2. MASTER AND SERVANT ⬰418(5)—AWARD IN GROSS—REVIEW OF DISCRETION OF TRIAL JUDGE.

Discretion of district court in award of compensation in gross on trial of cause de novo, on review of an award of weekly compensation by Industrial Board, will not be disturbed on further appeal.

3. MASTER AND SERVANT ⬰386(5)—COMPENSATION ACT—APPORTIONMENT OF AWARD—"DESCENT"—COMMUNITY PROPERTY.

Compensation Act, pt. 1, § 8a, providing that beneficiaries in case of death of husband will take by law of descent, means descent relating to community property, and not per capita, as provided by law of descent relating to separate property, especially since the Industrial Board construed the law that way immediately after its passage, and many cases have been decided on that theory.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Descent.]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Proceedings under Compensation Act by Mrs. Regina Boudreaux for death of her husband, opposed by the Gulf Production Company, subscriber, and Texas Employers' Insurance Association. From award of weekly sum by Industrial Board, made award in gross by district court on review, insurance association appeals. Affirmed.

Harry P. Lawther, of Dallas, for appellant. Gremillion & Smith, of Crowley, La., and Crook, Lord, Lawhon & Ney, of Beaumont, for appellees.

BROOKE, J. The following statement of the nature and result of this suit is agreed to by both sides, to wit:

July 28, 1917, one Israel Boudreaux died as a result of injuries sustained by him at Goose Creek, Harris county, Tex., on the 18th day of July, while in the employment of the Gulf Production Company. On said day of July the Gulf Production Company was a "subscriber" under the provisions of the Employers' Liability Act (Acts 33d Leg. c. 179), as amended by Act 35th Leg. 1917, c. 103, and carried a policy of compensation insurance with the Texas Employers' Insurance Association.

Israel Boudreaux left surviving a wife, Regina Boudreaux, and their two minor children, Idez and Louise Boudreaux. Said wife and children, together with a child by a former marriage, Mary Seppe Broussard, as beneficiaries, under section 8a, part 1, of the Act, made claim for compensation.

On said claim the Industrial Accident Board made the following award:

"November 16, 1917.

"Israel Boudreaux, Employé, v. Gulf Production Co., Employer. C—8332.

"Texas Employers' Insurance Ass'n, Insurer.

"On this the 16th day of November, 1917, after due notice to all parties at interest, came on to be considered by the Industrial Accident Board the above styled and numbered claim.

"It appearing that the questions involved herein have not been settled by agreement of the parties, the board, as provided by law, finds:

"(1) That on July 18, 1917, the Gulf Production Company was a subscriber to the Employers' Liability Act, and on that date carried a policy of insurance with the Texas Employers' Insurance Association.

"(2) That on said 18th day of July, 1917, Israel Boudreaux was in the employ of the Gulf Production Company, and as such employé was covered by said policy of insurance.

"(3) That on said date, and while so employed and so covered by said policy of insurance, as above stated, the said Israel Boudreaux sustained injuries which resulted in his death on or about July 28, 1917.

"(4) That the injuries sustained by the said Israel Boudreaux producing his death were so sustained by him while engaged in the course of his employment, and under circumstances creating a liability on the part of the insurer for compensation because of his death.

"(5) That the said Israel Boudreaux, now deceased, left surviving as his legal beneficiaries at the time of the injury and death, and at the time of the making of this order, who are entitled to receive the payment of compensation benefits, a wife, Mrs. Regina Boudreaux, and children, Idez Boudreaux, Louise Boudreaux, and Mrs. Mary Seppe Broussard; and the said Mrs. Regina Boudreaux, surviving widow of the deceased, is entitled to receive the payment of one half of the compensation, and the said named children are entitled to receive payment of equal portions of the other half of said compensation.

"(6) That the average weekly wage of the said Israel Boudreaux was the sum of $18.57 per week, 60 per cent. of which sum is $11.15, and the sum of $11.15 is found to be the weekly compensation to which the above-named beneficiaries are entitled to have paid to them by weekly payments as the same accrues.

"(7) That Gremillion and Smith, of Crowley, La., and Crook, Lord, Lawhon & Ney, of Beau-

mont, Texas, were employed as attorneys to represent, and did represent, before the Industrial Accident Board of the state of Texas, the legal beneficiaries, Mrs. Regina Boudreaux and the said Idez Boudreaux and Louise Boudreaux, in presenting their claim for compensation, and that the services so rendered by the attorneys named in prosecuting said claim for compensation and obtaining an award therein inured to the benefit of Mrs. Mary Seppe Broussard.

"(8) That the said Gremillion & Smith and the said Crook, Lord, Lawhon & Ney are entitled to receive payment for their legal services rendered in connection with presenting the claim before said board and prosecuting the same to award from the Texas Employers' Insurance Association an attorney's fee equal to 15 per cent. out of the first $1,000 awarded under this order to the said legal beneficiaries named, and a further sum equal to 10 per cent. of the amounts paid by virtue of said award in excess of said sum of $1,000, and the sums found for the said attorneys to be paid out of the weekly compensation benefits accruing to the beneficiaries named from week to week as the same accrue.

"It is therefore ordered, adjudged, and decreed by the Industrial Accident Board that the Texas Employers' Insurance Association pay unto the said Mrs. Regina Boudreaux, and the said Idez Boudreaux, Louise Boudreaux, and Mrs. Mary Seppe Broussard, the sum of $11.15 per week from July 18, 1917, up to and including this the 16th day of November, 1917, in the proportions awarded to each of said beneficiaries, and that it continue to pay to the said beneficiaries the said sum of $11.15 per week in the future, in accordance with the provisions of this award, as long as they are the legal beneficiaries of the said Israel Boudreaux, deceased, entitled to receive the payment of said compensation benefits, for a period of 360 weeks from and after July 18, 1917, less 15 per cent. of said weekly sums on the first $1,000 paid hereunder, and less 10 per cent. of all weekly sums paid hereunder in excess of $1,000, which said 15 per cent. of said sum of $1,000, paid in weekly sums, and 10 per cent. of the sum paid hereunder in excess of said $1,000 paid in weekly sums, it is further ordered, adjudged, and decreed by the board be paid to the said Gremillion & Smith and Crook, Lord, Lawhon & Ney."

November 30, 1917, the Texas Employers' Insurance Association filed suit in district court of Harris county, under section 5, pt. 2, of the act to set aside said award. March 5, 1918, all the matters of fact as well as of law being submitted to the court, said district court rendered judgment setting aside the award of Industrial Accident Board but in favor of the said Regina Boudreaux and her two minor children, and against the said Texas Employers' Insurance Association, for a lump sum of $3,446.75, less one-third, for which judgment was rendered in favor of the attorneys representing said beneficiaries under section 7d, pt. 1, of the Act, and distributing the $2,297.85 awarded to the widow and minor children one-half to the widow and one-half to the children. Appellant gave notice of appeal, and has perfected its appeal to this court by supersedeas bond.

There are in this record two assignments of error. The first is as follows:

"The court erred in adjudging that the instant case was a special one where manifest hardship and injustice would otherwise result, unless the association was compelled to redeem its liability by a payment of a lump sum; and in rendering judgment in favor of the said Mrs. Regina Boudreaux, individually and as next friend for her two minor children, Idez and Louise Boudreaux, and against the said Texas Employers' Insurance Association, for the lump sum of $3,446.75, less one-third of said sum of $1,148.90, for which latter judgment was awarded in favor of Gremillion & Smith and Crook, Lord, Lawhon & Ney, attorneys, and against the said Texas Employers' Insurance Association."

Under this assignment there is this proposition:

"Section 18, part 1, of the act, provides: 'It is the purpose of this act that the compensation herein provided for shall be paid from week to week and as it accrues, and directly to the person entitled thereto, unless the liability is redeemed as in such cases provided elsewhere herein.'

"In section 8a, part 1, it is provided: 'And the compensation provided for in this act shall be paid weekly to the beneficiaries herein named and specified, subject to the other provisions of this act.'

"Section 15, part 1, of said act, provides: 'In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other character of lump sum settlement save and except as herein specified; provided, however, that in special cases where, in the judgment of the board, manifest hardship and injustice would otherwise result, the board may compel the association, in the cases provided for in this section, to redeem their liability by payment of a lump sum as may be determined by the board.'

"There was no agreement of the parties here; the Industrial Accident Board awarded compensation in weekly payments so that in its judgment this was not a special case where manifest hardship and injustice would result from such manner of payment; and the facts of the case, as disclosed by the record, show that we have here no case where manifest hardship and injustice would otherwise result unless the association was compelled to redeem its liability by payment of a lump sum."

There was no agreement of the parties for a lump sum settlement. The testimony of Mrs. Regina Boudreaux, the only witness on this point, testified:

"My little girls have not got any property. They have no means of living but the living I give them. I make a living for them by running a rooming house. I have just been doing that since Christmas. I am a dressmaker, and

used to sew. Since my husband's death I have sewed as a seamstress, and have supported my children that way. My children have no income from any other source, and I have no income from any other source. My husband was working in Texas for a year when he got killed; I do not know for whom he was working. During that year my husband did not send me any money. My husband was gone on his work; he was working for the last seven years. He had not quit me that I know of. I had not been making a living for myself and my children for seven years. Every time my husband come home he gave me all the money he had. During those seven years sometimes he stayed away three or four months before he came home. He never did stay as long as three years. The longest time he stayed was one year; that was not the year just before he got killed. When he got killed last July it was four months since he had been at home. He had been working in Texas a year, but he came home twice during that year. My husband did not leave me and go to New Orleans and stay nearly three years. He stayed at New Orleans, but I was staying there with him, too. My husband had not quit me, and I had not quit him, for as much as three years before he died. I know that. There had been no separation. I had not abandoned him, and he had not abandoned me, for the space of three years before his death; he was just going on working. When my husband was away from me over here in Texas I do not know what he did with his money. He did not send me money, but every time he came home he gave me all that he had. The last time he came home he gave me seventy-five dollars."

Section 15, pt. 1, of the Compensation Law, makes provision for lump sum compensation in two ways: (a) Under agreement of the parties subject to the approval of the Industrial Accident Board; and (b) where, in the judgment of the board, manifest hardship and injustice would result, in which case the board may compel the association to redeem its liability by payment of a lump sum in an amount to be determined by the board. The first depends upon the agreement of the parties; the second upon the discretion of the Industrial Accident Board upon any given case.

The Compensation Act provides (article 5246—44, Vernon's Texas Statutes, 1918 Supplement):

"If the final order of the board is against the association, then the association, and not the employer, shall bring suit to set aside said final ruling and decision of the board, if it so desires, and the court shall in either event determine the issues in such cause instead of the board upon trial de novo, and the burden of proof shall be upon the party claiming compensation. In case of recovery the same shall not exceed the maximum compensation allowed under the provisions of this act."

The average weekly wage of Israel Boudreaux, deceased, was $18.57 per week, 60 per cent. of which sum is $11.15, which was found by the Industrial Accident Board and by the court to be the weekly compensation

that would arise on account of the death of Israel Boudreaux, resulting while in the course of his employment. The Compensation Law provides for an attorney's fee, in case of suit, of one-third of the amount of compensation awarded. This one-third in this instance would be $3.71 out of each week's compensation, which would leave $7.44 to be shared by the surviving wife, Mrs. Regina Boudreaux, and her two minor daughters. The wife would be entitled to half of this amount, under our interpretation of the Compensation Law, which will be hereinafter discussed, and the two daughters would be entitled to the other half, or $3.72 per week, or $1.86 each per week. The proof showed these two daughters to be within the scholastic age and that they were attending school. It appeared that they had no earning ability whatever.

The Legislature must have intended to leave the matter of lump-sum settlement to the judgment of the Industrial Accident Board. The expression, "Provided, that in special cases where, in the judgment of the board, manifest hardship and injustice would otherwise result, the board may compel the association * * * to redeem their liability by payment of a lump sum," seems to be intended to leave the matter as flexible as possible, so that the judgment of the board can be exercised freely for the relief of those who might otherwise suffer an injustice. This provision, evidently, was intended to have application in cases where the needs are great and the compensation small. It seems to us that nothing else could have been intended.

In the present case we have one in which two young girls have no means of support except what little their mother may be able to furnish by running a rooming house, and the revenue arising therefrom is not shown, but it may be naturally assumed that the profits from such an enterprise are meager. When we take into consideration the high cost of living of the present time, and the ever changing conditions and vicissitudes incident to the life of a widow with a family to support, it occurs to us that the lower court was correct in concluding that a lump sum ought to be awarded in this case, rather than a weekly compensation, which would give each of these little girls $1.86 per week. This being a case in which hardship would result, justifying the award of a lump sum, we think that this provision of the law ought to be applied.

[1] The Compensation Law clearly gives the Industrial Accident Board the power, and makes it its duty, to award lump-sum compensation in cases where, in its judgment, hardship would otherwise result. Article 5246—44, Vernon's Sayles' Texas Civil Statutes 1918, provides for the bringing of suit to set aside the ruling and decision of

the Accident Board, and that in such case the court shall determine the issues in such cause instead of the board, upon trial de novo. In other words, the findings of the Industrial Accident Board are not final nor conclusive, and a suit may be brought under the Compensation Act of 1917 to review the matter, and in that case the trial shall be de novo, and it becomes the duty of the court to hear the entire case and to pass upon all questions involved or presented. The bringing of the suit to set aside the judgment of the board seems to operate to have the effect of setting aside such judgment ipso facto, since it is apparently not necessary to allege grounds or reasons for the setting aside of the judgment of the board. The effect of the law is to provide a method of having the matters passed upon by the court with judicial powers upon a trial entirely de novo. The appellant, not being satisfied with the judgment of the Industrial Accident Board, brought this suit in a district court of Harris county, and all matters were by the court reviewed upon a trial de novo, and the court determined the issues in such cause instead of the board. The Industrial Accident Board had no further power in the premises. It could perform no other functions in the matter after the bringing of the suit, and every question was subject to the examination and disposition of the district court, and the court had the same power to award the lump-sum compensation that the board formerly had. It was the judgment of the court that manifest hardship and injustice would result if a lump-sum award was not made, and judgment was entered accordingly. The Industrial Accident Board, under the provisions of the Compensation Law, is bound by no hard and fast requirement, and the district court is given the power to act in the same flexible manner. No abuse of discretion has been made to appear by the appellant, and it has not shown any resulting hardship or prejudice. The appellant was not satisfied with the findings of the Industrial Accident Board, which made a weekly award. It selected the forum for the review of the findings of the board. It is not satisfied with such review. It applies to this court for further consideration. The trial judge heard all of the facts, considered all of the circumstances and surrounding conditions, and exercised his judgment in the manner required by the Compensation Law and as his official duty required him to do.

[2] This court will not substitute its judgment and its discretion for that of the trial judge, who was in a better position to pass upon the question. We believe that the findings and conclusions of the trial judge, as to whether the compensation shall be paid in a lump sum, are final and conclusive, and not subject to be reviewed, on appeal, in the absence of any provision authorizing such review.

There have been no reasons presented for disturbing the findings of the trial court upon this issue, and the first assignment is therefore overruled.

The second assignment of error is as follows:

"The court erred in rendering judgment herein as aforesaid, and in distributing the amount of $2,297.85 (being said sum of $3,446.75 less $1,148.90) between the said Mrs. Regina Boudreaux and her two minor children, Idez and Louise Boudreaux, in the proportion of one-half to the said Mrs. Regina Boudreaux and one-half to the said two minor children, Idez and Louise Boudreaux, together."

The proposition under this assignment is:

"The beneficiaries named in section 8a, part 1, of the act are entitled to share per capita in the distribution of the compensation provided in the act."

Section 8a, part 1, of the act, reads as follows:

"The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto abandoned his wife at the time of the injury, the wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband and the minor children, without regard to the question of dependency, dependent parents and dependent grandparents and dependent stepmothers and dependent children or dependent brothers and sisters of the deceased employé, and the amount recovered thereunder shall not be liable for the debts of the deceased nor for the debts of the beneficiary or beneficiaries, and shall be distributed among such beneficiaries as may be entitled to same as hereinbefore provided according to the laws of descent and distribution of this state; and provided such compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries when the same are capable of taking, under the laws of the state, or to their guardian or next friend, in case of lunacy, infancy or other disqualifying cause of any beneficiary. And the compensation provided for in this act shall be paid weekly to the beneficiaries herein named and specified, subject to the other provisions of this act."

The trial court, in construing the aforesaid section, ruled that, Israel Boudreaux being a married man at the time of his death, the compensation due to his beneficiaries would be distributed in accordance with the statute of descent with regard to community property; that is, one-half to the surviving widow and the other one-half to the two children of the marriage.

It is conceded by the appellant that Mrs. Regina Boudreaux was the surviving wife of Israel Boudreaux, deceased, and that her two minor daughters were the only children of the deceased entitled to participate in the compensation. And it is undisputed that

Mrs. Boudreaux ,and her two daughters are the only persons entitled to share in the compensation arising on account of the death of Israel Boudreaux. The only question involved is as to the interest of the respective parties in the compensation.

[3] Appellant contends that the compensation should be shared by the beneficiaries per capita. The appellees contend that one half should go to the surviving wife, and the other half to the children, share and share alike. The trial court, in construing the statute in question, held that, Israel Boudreaux being a married man at the time of his death, the compensation due to the beneficiaries should be distributed in accordance with the statute of descent and distribution with reference to community property, and we believe that this is a correct construction of the statute. In the first place, it will be noted that the Compensation Act provides that the compensation in case of death shall be distributed among such beneficiaries as may be entitled to the same according to the laws of descent and distribution. We have a law touching the descent and distribution of separate property, and we have a law touching the descent and distribution of community property. The Compensation Act provides for the distribution of compensation according to the laws of descent and distribution. This clearly indicates that the law of descent and distribution as to the community property shall apply where the rights of husband and wife are involved, and that in other cases the law of descent and distribution as to separate estate shall apply.

The Industrial Accident Board, having the administration of the Compensation Law in a comprehensive way, was required to construe the law as to who are beneficiaries in case of death; and it did so, and fixed a rule for its government on August 24, 1917, soon after the Compensation Act of 1917 went into effect. The board then had under consideration a matter in which the Honorable Harry P. Lawther, who is attorney for the appellant in this case, was interested. Mr. Lawther urged his views upon this question before the Accident Board at that time, and contended then, as now, that the compensation should be distributed per capita. The Accident Board did not share in this view, and expressed its conclusions in a letter written by its chairman to Mr. Lawther, dated August 24, 1917, and that letter was approved by the Industrial Accident Board as expressing its views upon the question, and it was adopted as a rule of construction touching the questions discussed, and it was ordered by the board that the same be recorded as a rule of action for the government of the board and those operating and acting under the Employers' Liability Act in this state, and 3,000 copies of the same were ordered to be printed by the board for distribution. This ruling of the Accident Board

has been followed ever since it was adopted, and the rights of hundreds, perhaps thousands, have been disposed of accordingly. So far as we know, the question has not been presented to any court for determination. We believe that the courts of this state will agree with the Industrial Accident Board. However, the courts may disagree with the board. The conclusion reached by the Accident Board seems to be consistent and correct throughout; the rights of many have already been determined by it. It should be the policy of the courts to adopt the views of the Accident Board, under all the circumstances, if found to be fairly consistent with rules of construction.

The ruling of the Industrial Accident Board, as expressed in the letter to Mr. Lawther, is as follows:

"Austin, Texas, August 24, 1917.
"Honorable Harry P. Lawther, Dallas, Texas:
"My dear Mr. Lawther: I have read with more than passing interest your letter of July 25th addressed to Mr. D. Edward Greer, and dealing with the primary question of the distribution of compensation, and 'the ancillary, and equally as important, question of lapsed compensation. Any question which challenges the consideration of you gentlemen becomes, if not theretofore, an important question. And when you reach the iconoclastic conclusion, which you have in the present instance, those who differ with you, and who are charged with an administrative interest in the subject-matter, should explain that difference, and 'give a reason' to justify a contrary application of the important principles involved.

"I shall not attempt to analyze the argument which you make to reach your conclusion, but shall approach the subject from the original point of view. In doing this I realize I surrender certain advantages which always inhere in the analysis of an argument. But with me it is not a question of advantage—not with the correctness of your premise nor the incorrectness of your conclusion. But rather a purpose to preserve the statute as written by the Legislature, and to administer it in the humane and just spirit in which it was enacted. The conclusions which you reach are:

"(a) That the language, 'The amount recovered shall be distributed among such beneficiaries as may be entitled thereto according to the laws of descent and distribution of this state,' are meaningless, and should be ignored in construing the statute—that they should be read out of the statute.

"(b) That the compensation should be apportioned per capita among all the beneficiaries named; that the act places all the beneficiaries in the same degree or class.

"(c) That when a cobeneficiary dies the compensation pro tanto lapses.

"The questions involved are:
"First. What is compensation?
"Second. How much, or the quantum thereof?
"Third. How distribute, or who is entitled to it?

"Each of the questions must be answered within the scope of the act; must be so construed and answered as to harmonize with the

act in its entirety. In those places where the act is plain and unambiguous it will require no rule of construction to interpret its meaning which is gathered from the apt language expressing the purpose and intent of the act.

" 'It is an elementary proposition that courts only determine by construction the scope and intent of a law when the law itself is ambiguous and doubtful. If a law is plain, and within the legislative power, it declares itself, and nothing is left for interpretation.' Lewis, Sutherland, art. 267. A statute should be construed as an entirety. 'A statute is passed as a whole, and not in parts or sections, and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every part or section, and so as to produce a harmonious whole.' Lewis, Sutherland, art. 268.

" 'A statute must receive such reasonable construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object. ·

" 'The general intent should be kept in view in determining the scope and meaning of any part.' Id.

" 'The Employers' Liability Act undertakes, where an employé is injured in the course of his employment, to compensate him—not entirely, but partially—for the injury sustained. In such case there is no reason for construction, for the statute states that he himself shall be entitled to compensation, and 'that compensation shall begin to accrue with the eighth day after the date incapacity commenced.' Now, that which is paid to the injured employé is 'compensation.' The question then arises, 'What is compensation?' The word 'compensation' means: 'That which is given or received as an equivalent, as for services, debt, want, loss or suffering; indemnity, recompense, amends; requittal. That which supplies the place of something else, or makes good a deficiency or makes amend.' Century Dictionary. Under the Employers' Liability Act, compensation is given and received 'as an equivalent' for wages. It is recompense for lost earning capacity, and supplies the place of destroyed ability to produce. If there was no earning capacity, there can be no compensation. The power to earn wages, and the actual earning of wages, are conditions precedent to the lawful claiming or payment of compensation. The theory of compensation is that the injured employé was of value to society as a producer—was worth something to others who were dependent upon his earnings for support. This law takes no note of the 'slacker,' but deals only with those who are workers in the industrial world, and who produce the wealth of the world, and who in doing so earn wages. Not only is this true, but the amount of the compensation bears mathematical relation to the amount of the wages so earned. If he earns much he is compensated accordingly, while if he earns little he is compensated but little. This law, like nature, rewards the diligent, measured always by producing (earning) capacity, while the sluggard, or he who produces but little, receives at its hands only that small but just part to which he is entitled by virtue of his lost power of production. The ratio between wages and compensation is unvarying—is fixed by statute. It is sixty per cent. of his average weekly wages before he was injured.

"We are dealing now with total incapacity for the purpose of carrying the principle into application in death cases. Under section 10, part 1, of the act, an employé who is injured in the course of his employment is entitled to sixty per cent. of his average weekly wages as compensation for a definite period.

"The law fixes the percentage. The employé expects it before, and claims it after, injury. The employer buys that percentage when he pays for the policy, and the association agrees to pay that percentage in case the contingent obligation matures and the policy has to be paid. You certainly would not argue that this amount of compensation could be reduced as long as the incapacity was total and permanent.

"Turning now to section 8, part 1, of the act, which is the section which provides: 'If death should result from the injury, the association hereinafter created shall pay the legal beneficiaries a weekly payment equal to sixty per cent. of his average weekly wages,' etc. The requirements as to payment under this section are identical with those under section 10, relating to total incapacity, except the payee is different.'

"The beneficiaries to whom compensation is payable under section 8 are designated under section 8a, and the rule of method of determining which of said legal beneficiaries shall take, and the order in which they shall take, is set out and prescribed in said section 8a by the direction: 'And the amount recoverd thereunder shall be distributed among such beneficiaries according to the laws of descent and distribution of this state.' This section groups the beneficiaries who may take compensation, and limits the payment to persons within the group. A person not within the group named cannot claim compensation, however dependent he may have been upon the deceased in his lifetime. And one not dependent in fact, or conclusively presumed by the law to be dependent, cannot take compensation, however close his kinship may be. It is not a rule of heirship under the laws of descent and distribution, but the laws of descent and distribution are simply called into play for the purpose of locating the proper parties within the given group who can take the compensation provided by law. The law presumes the deceased employé would want the compensation to pass to the dependent or dependents nearest and dearest to him in life. These, those nearest and dearest, are clearly ascertainable under our statutes of descent and distribution, which have been designed for the disposition of the property of those who die without leaving wills. Everybody named in section 8a without regard to dependency, except the stepmother, can take property by inheritance from a deceased employé under these statutes, and the order in which they take is fixed by the statutes. That compensation, or the right to it, is not a vested right, to be transmitted by will or inheritance, is perfectly clear under the act itself, and your argument to sustain that proposition was unnecessary. Every person named in section 8a except the stepmother is an heir, and can take by inheritance under the statute. But the Employers' Liability Act narrows the list of those who can take compensation to the persons named in section 8a and none others. It follows then, of course, that if there are none such to take that the compensation will lapse for the want of a bene-

ficiary. But so long as there exists a beneficiary within the compensation period, the association must pay 60 per cent. of the wages of the deceased, for it is so written in the law.

"The Legislature, in the language used and heretofore quoted, with the limitations suggested, as clearly wrote the laws of descent and distribution into this act as if they had copied them verbatim. They did so to afford a fixed and construed rule for the distribution of the compensation, which is as simple and as capable of quick application as any other rule of the law. They did it also because it was a just and humane rule of the law, long established and confidently believed in by the people who live under it. Our laws of descent and distribution are not arbitrary, nor are they of sudden or of sporadic growth. But they were long thought over, carefully considered, applied, and approved by the Texas people. Such law or laws on that subject have been the source of much legislation and more litigation through all the ages of ours, and the jurisprudence of other, people, until now we have fixed upon our present laws of descent and distribution as the proper way to pass and distribute the property of him who dies without a will. In doing this the law does for him that which he failed to do in his lifetime. And in doing so it tried to give the property to those who had nature's first claim upon the deceased, and to whom, in the light of all experience, the law believes he would have given it had he made a will. In doing this the law took up the lines of the human heart, and ran them to their end, and the objects first reached from heart, dead, it presumed were closest when the heart was warm and loved the world, and these the law declared to be the heirs who should take the property of him who died intestate, because all nature told the law that had the deceased made a will that these would have been his beneficiaries. And so our law writes every day in this state of ours the wills of the many, many men and women who die intestate. Those who so die know the law—approve its just, natural, and humane distribution, and, so approving, die, leaving their property and those whom they love to the 'laws of descent and distribution of this state.' So where could the law have found a better rule of action, a more approved method of distribution, among the named and favored group designated in section 8a, than is afforded by 'the laws of descent and distribution of this state.' Yet you would read this provision out of this statute, and justify your act on the uncertain ground of 'uncertainty.' Where is there any uncertainty in the application of this rule—this method—in the distribution of compensation?

"If the relation of the parties, the beneficiaries, is such to the compensation that, if it had been reduced to possession in his lifetime, it would have been community property, then, in case the injured employé should die, the compensation would be payable to his beneficiaries under the rule of method prescribed by the laws of descent as applicable to community property. On the other hand, if the relation of all the parties to the compensation was such that, had it been reduced to possession during the life of the employé, it could have been separate property, then the laws of descent and distribution, as the same govern separate proper-

ty, would furnish the rule or method for its apportionment. This is made conclusive by application of the rule in either case. If the husband is totally and permanently injured, the wife is entitled to one-half the compensation payable to him, because it is given in lieu of wages—given to compensate for the loss of earning capacity. Wages is community under our law, and the wife entitled to one-half the husband earns. The wife is entitled to one-half of the earning capacity of the husband, and if that earning capacity is destroyed by an industry, and she is not entitled to one-half the compensation paid therefor, then, as to her, there is no law, for she has not been compensated. If he dies as a result of the injury so sustained, her loss was one-half of his earning capacity—one-half of the wages he would have earned—and to be compensated for the loss she has suffered is entitled to one-half of the compensation to be paid. Under the community statute, there being children, she would get one-half, while under the other statute she would get only a one-third. She lost a half, and the law compensates for the loss so sustained, and gives her one-half of the compensation. If there are no children, she gets it all, because under that statute, applied only as a rule, she would take all. Why should she not have it? Hers was the shortest line reaching out from the dead heart which the world's industry had destroyed. If they had children, all dependent, she would take half and they would take half. The compensation payable at the death of the employé and to the children would be divided among the children because they were all of equal standing, and the equal right of each was an intervening barrier against the other taking more than his portion of the compensation. If one died or ceased to be a beneficiary, his part of the compensation would not lapse because the status of the others was fixed at the death of the employé; they were then, and continued to be, legal beneficiaries within the terms of the law, and the compensation which went to their cobeneficiaries did so because he had a right to share in that compensation, and when he ceased to share it was because this right so to do failed (lapsed, if you please), and not because of any right accruing to the association. The remaining beneficiaries were prevented in the beginning from taking all the compensation because of the intervening equal right of their cobeneficiary, and when that right ceased they were entitled to it all, not as heirs of a deceased beneficiary, but as the legal beneficiaries of the deceased employé. It is not a question of heirship, but the question is, is there in existence a legal beneficiary of the deceased employé capable of taking the compensation, and, if there is, he is entitled to it. A reference to section 8 ought to conclude this argument, for it says the association shall pay the legal beneficiaries 60 per cent. of the average weekly wages of the deceased. It is immaterial whether there is one or forty beneficiaries, the obligation of the company is the same, to wit:

"To pay sixty per cent.—no more, no less. In addition to this the employer bought that much, the employé expects that much, and the insurance company contracts to pay that much. So you see that under the laws of descent and distribution the one relating to the distribution

of community property is of easy and simple application, furnishing a rule for the apportionment of compensation to the legal beneficiaries of a deceased employé. But let us apply this community statute to a reasonably complex case, and see how it works. Of course, the existence of the marital relation is a condition precedent always to the application of this statute for any purpose. Take this case: An employé is injured and lives three months and one week totally incapacitated. Then, as a result of such injury, he dies, leaving a wife, a boy two years old, and a girl baby, all three of whom are conclusively presumed under the law to be dependent on him. In addition he leaves an idiotic brother, a father, blind and 70 years of age and penniless, and a paralytic stepmother 60 years old and incapable of doing work, and all three, as a matter of fact, are wholly destitute and dependent upon him for support. The compensation is $15 a week. All the parties are beneficiaries within the defined group made by section 8a, and the question arises to whom and how shall the money be paid? The same section says, under the laws of descent and distribution. We ask, which one? And when we see that the marital relation existed—that the wife's interest was involved, and that the compensation is given in lieu of wages—we at once turn to the laws of descent and distribution and invoke the statute governing community as the rule by which to go. Applying this rule, we give the wife one-half the compensation and the boy and the girl baby one-fourth each. The rights of the children are equal, and they share equally. Each would share one-half with the mother were it not for the intervening equal right of the other. The father, brother, and stepmother are beneficiaries in being capable of taking, not as heirs, but as beneficiaries; but they are prevented from doing so by virtue of the prior and higher rights of the wife and children, so fixed by the laws of descent and distribution which is made a part of the Compensation Act for the purpose and reasons stated. The boy dies at the end of the month. The liability of the association is in no sense changed—it still must pay sixty per cent. to the legal beneficiaries. The girl would then take the one-fourth formerly paid to her brother, not as his heir, but as unobstructed beneficiary of her dead father. The intervening cause which prevented her taking it at first—the equal right of her brother—has been removed—his right thereto has failed—and hers, which has been thus suspended or held in abeyance by his equal right as to that part, asserts itself, and she is entitled to that which had theretofore gone to him. Then the first baby, at the end of another month, dies, and the compensation immediately passes to the mother under this statute, which gives her all the community where there are no children, for the same reasons apply. At the end of another month she dies, and the compensation passes to his father and brother, one-half each, not as heirs—not by inheritance—but as surviving beneficiaries of their deceased brother and son. They were legal beneficiaries at the time of his death, capable of taking under the law, but their respective rights were suspended by the limitations made that the compensation should be distributed under the laws of descent and distribution which gave to the wife and children a prior and higher right to the compensation which operated to hold in

abeyance their right. If the Compensation Act made all their rights equal, as you suggest, it at once differentiated these rights by declaring that they should be determined under the laws of descent and distribution of this state. Why should the Legislature devise a new plan for the apportionment of compensation which is based on the cleanest and highest property—wages. Wages suggest labor—toil; and they are always an ingredient in the fulfillment of the divine injunction that man shall eat his bread in the sweat of his face. Why have a new rule for the distribution of compensation whose forerunner was earning capacity and sine qua non to whose existence was wages. You admit the Legislature did not write a new rule, and then you evolve the one you would apply for the lack of certainty, which I cannot admit.

"But, returning to our example, at the end of another month the brother dies, and the unearned compensation, or the right to it, as it is reduced to possession, passes to the father, who is the only remaining beneficiary under the laws of descent and distribution who can take. It comes to him because the superior rights of his daughter-in-law and the children and the equal right of his son have failed. He is the sole beneficiary under the laws of descent and distribution. There may be other brothers and sisters and other kin, but they cannot take, because they are not dependents. So you see, in this respect, the Compensation Act limits and restricts the laws of descent and distribution to the group named. A person can be an heir and at the same time not be a beneficiary, because of the restrictions and limitations pointed out. But he cannot be a beneficiary (with the exception of the stepmother, which I will point out later) without being an heir. The provision in the act making a stepmother a beneficiary was an enlargement on the statutes of descent and distribution, and we cannot look to them for authority to pay compensation to her, but must look to the Compensation Act itself. Now, the father dies, and we turn to the laws of descent and distribution, and they are silent as to the rights of the stepmother; but the Compensation Act says the compensation shall be for the sole and exclusive benefit of a certain group, and she is in the group, and is therefore entitled to be paid the unearned compensation as it accrues. She lives a month, and then she dies, and the compensation ceases because there is no legal beneficiary to receive the same.

"It occurs to me that this is so plain that a wayfaring man ought not to have any trouble with it, much less two of the best lawyers in two ends of a big state.

"Now, try out a 'claim' under the separate property descent and distribution act. You start with a single man, and, there being no marital rights involved, the community statute is not applicable, and you ascertain the beneficiaries under the other statute 'just like tracking a rabbit in the snow,' and reach the last beneficiary in this case like you did in the other, and when all are gone there will be no one to take the compensation, and the association will be relieved of its obligation to pay. The conclusion I reach then is:

"That so long as there exists a beneficiary capable to take the compensation there can be no such thing as either a lapse or partial lapse of compensation. The association in such case

must pay, and pay what the statute says pay— 60 per cent. of the average weekly wages of the deceased employé. The Murphy Case which you cite sustains this view. The court, in the concluding part of the opinion, says—obiter, it is true—that while the compensation in that state is made payable to the mother, and is not a vested right capable of being transmitted by inheritance, yet if she should die leaving minor children the compensation would not lapse, but would survive for them as beneficiaries of the deceased father. Thus the Massachusetts court reads into their statute that which our Legislature wrote into ours. The Matocney Case is in no sense in point, for it is based on the agreed fact that the mother was the sole beneficiary and was an invalid. The court held that compensation was not a vested right, capable of being transmitted by inheritance, and that if a sole beneficiary died compensation would lapse. Our statute fixes this both in its language and construction, and for this purpose citation was unnecessary. The court held that on the agreed facts it was not a case in which to coerce a lump sum settlement.

"The construction which you place upon this section of this statute is so far-reaching in its effect, is of such vital importance to the employés of this state, that I will appreciate it very much if you will advise me if it is submitted to any court for construction at any time, as I will ask for permission to file a brief with the court supporting the views I have here advanced."

"The above and foregoing letter, dated August 24, 1917, and addressed to Honorable Harry P. Lawther, Dallas, Texas, has been read and approved by the board, and the same is hereby adopted as a rule of construction touching the questions therein discussed; and it is ordered by the board that the same be put on record in the Miscellaneous Order Book of this department as a rule of action for the government of the board and those operating and acting under the Employers' Liability Act in Texas.

"It is also ordered by the board that three thousand copies of said order, when so entered, shall be printed for distribution among employers and employés and associations covered by this act.

"Done at Austin, Texas, this 24th day of August, 1917.

"T. H. McGregor, Chairman of Board.
"J. H. Fricke, Member of Board.
"J. H. Fowler, Member of Board."

It will be observed that the appellant does not complain of the amount of the lump sum awarded, $3,446.75, as determined by the trial court, and no complaint is made as to allowing the attorneys one-third of this amount. This lump sum was awarded according to the rule of discounts adopted by the state of New Jersey as a rule of computation in compensation cases, which rule has been adopted by the Industrial Accident Board of this state.

As we have formerly said, no case has been construed by the courts of this state with reference to this matter, and therefore we are left to be guided only by what is just and

fair to all parties concerned. We have given this matter our most earnest and thoughtful consideration, and we are of opinion that this assignment must also be overruled.