## MARYLAND CASUALTY CO. v. KENT et al.*
### (No. 1051–4414.)

Commission of Appeals of Texas, Section A. March 7, 1928.

1. **Master and servant** ⟪⟫361—That compensation was determinable by quantitative standard, and that agent had discretion regarding hours and labor, and furnished some appliances, was not conclusive he was not employee (Rev. St. 1925, art. 8309).

That local agent of oil company had some discretion as to his hours or quantity of labor, and that he was to furnish some of appliances for accomplishing results contemplated, were not conclusive of an independent contractorship, or other relation foreign to that of employer and employee, nor was fact that his compensation was determinable with reference to quantitative standard, since Workmen's Compensation Law, Rev. St. 1925, art. 8309, recognizes compensation other than what is generally called wages.

2. **Master and servant** ⟪⟫361—Local agent of oil company held to be "employee," within Workmen's Compensation Act (Rev. St. 1925, art. 8309).

Local agent of oil company, under duty to receive company's products shipped, which were to remain property of company until sold, and who was prohibited from making sales, except for cash, unless with express permission of company, which fixed prices, from which agent could not deviate, and who was to receive commissions measured by named percentages. of amount of sales, contract being terminable upon 10 days' notice by either party, *held* to be "in service," of employer under "contract of hire," within literal terms of statutory definition of "employee," under Workmen's Compensation Act (Rev. St. 1925, art. 8309).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

3. **Master and servant** ⟪⟫417(7)—Whether local oil agent's work for day was completed when truck overturned, so that death was not in course of employment, held for jury (Workmen's Compensation Law).

In action by insurer to set aside award of Industrial Accident Board for death of oil com-

pany's local agent, question whether employee's work for day was completed, or whether he was not about his master's business, at time truck overturned, so that his death was not in course of employment, within meaning of Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), *held* for jury.

Error to Court of Civil Appeals of Ninth Supreme Judicial District. ·

Action by the Maryland Casualty Company, insurer, to set aside an award of the Industrial Accident Board in favor of Mrs. Clarice Kent and others, claimants, for the death of J. M. Kent. Judgment for claimants was affirmed by the Court of Civil Appeals (271 S. W. 929), and the insurer brings error. Affirmed.

D. Edward Greer and Baker, Botts, Parker & Garwood, all of Houston, for plaintiff in error.

Smith & Lanier, of Jasper, for defendants in error.

NICKELS, J. The nature of the case is fully exhibited in the opinion of the Court of Civil Appeals. 271 S. W. 929. An important question here is the existence vel non of a relation between Kent (the insured) and Gulf Refining Company (subscriber per the Workmen's Compensation Law), which amounted to that of employer and employé (article 5246–82, Vernon's Sayles' Tex. Civ. Statutes 1918 as amended; article 8309, R. S. 1925), wherein it is said that an "employé" is a "person in the service of another under any contract of hire, expressed or implied," etc.

The relation is evidenced by the writing executed by the parties reproduced in the opinion of the Court of Civil Appeals. Per the agreement: (a) The premises and stock of goods (replenished from time to time) at Jasper were the premises and goods of the company, the goods remaining in ownership of the company "until sold." (b) Containers remained the property of the company, even after sale of contents. (c) Proceeds of cash sales of goods were the property of the company, receivable by it from Kent at Houston "weekly"; credit sales were forbidden, save as per new authority given from time to time. (d) Kent became custodian of the premises and goods, with responsibility "for all goods." (e) His active duties were to receive goods "shipped to him," to pay "all drayage and delivery charges," to "sell the goods for cash" (but on credit upon additional authority as given), to "account for all sales" weekly, to remit weekly to the company at Houston "all moneys received by him from sale of above-named goods," to collect all "empty drums and barrels" and "on the 1st day of each month" to "render * * * statement * * * showing in detail the goods on hand." It was provided further: (f) Cash sales were to be made "at prices named"

(not originally, but from time to time) by the company. (g) Credit sales were to be made only to parties (then) acceptable to the company and "upon terms" (then) "authorized by it." (h) From "its stock of goods in hands" of Kent the company might make shipments, and as might be ordered by the company Kent would fill orders from that company for 25 cents "per barrel for drayage and clerical work." (i) "Empty drums and barrels" would be "shipped back to the company as ordered." (j) For services provided for, except that of filling orders as mentioned in (h) above, Kent would receive from the company "commissions" measured by named percentages of amounts of "sales" payable "on or about the 1st of each month." (k) The contract was made terminable "upon 10 days' written notice" by either party. ·

Suppose Kent in possession of the storeroom and given goods on a given day, and without specific directions forecasted, but not provided in the instrument: He could not negotiate a sale, even for cash, for the price observable in making a sale has not as yet been named by the company. Negotiation of credit sales is impossible, for the requisite supplemental authority and terms have not been given. For like reason shipments from the stock, or other disposition, cannot be made. This, with the complete ownership retained in the company at all times, sufficiently indicates both power of control and actual control in great detail by the company. In the situation thus projected, there inhered a relation partaking of or at least akin to that of master and servant (Burton v. G., H. & S. A. Ry. Co., 61 Tex. 526; New Orleans, etc., Ry. Co. v. Hanning, 15 Wall. 649, 21 L. Ed. 220; Singer Mfg. Co. v. Rahn, 132 U. S. 523, 10 Sup. Ct. 176, 33 L. Ed. 442), and wholly alien to that of an independent contractorship (Cunningham v. Railway Co., 51 Tex. 503, 32 Am. Rep. 632; Shannon v. Western Indemnity Co. [Tex. Com. App.] 257 S. W. 522, and cases there cited). It may appropriately be noted that Judge Bonner, in Cunningham v. Railway Co., supra, quoted section 78 of Shearman & Redfield on Negligence by way of illustration, and not by way of holding that the test therein laid down is all-comprehensive or of universal application, and that Judge Stayton, in Burton v. G., H. & S. A. Ry. Co., supra, laid down rules which do not at all consist with that part of Shearman & Redfield's definition, wherein "the supreme choice, control, and direction" is required to touch "the work * * * in all its details."

[1] True it is that Kent's compensation was determinable with reference to a quantitative standard, that he had some discretion as to his hours or quantity of labor, and that he was to furnish some of the appliances for accomplishing the results contemplated. But those things are but evidentiary, with probative value according to other elements,

and are not at all conclusive of an independent contractorship or other relation foreign to that of "employer" and "employé." Shannon v. Western Ind. Co., supra. The Workmen's Compensation Law recognizes compensation other than what is generally called "wages" (article 8309, R. S. 1925). Corbett, held to be a "servant" (Singer Mfg. Co. v. Rahn, supra), sold "on commission" and furnished horses to pull the company's wagon; and Carvin, held not to be an independent contractor (New Orleans, etc., Ry. Co. v. Hanning, supra), earned on quantitative basis, furnished materials, and had general liberty of fixing hours, etc., of his own services and of those employed (and paid) by him to assist.

[2] Unquestionably Kent was "in the service" of Gulf Refining Company under a "contract of hire," within the literal terms of the statutory definition; and we are unable to perceive just ground upon which his status may be taken from the spirit of the law, if, indeed, the broad terms used by the lawmakers may be restricted at all.

[3] The second question presented is thus stated by plaintiff in error in the form of a proposition:

"Compensation provided for in the Employers' Liability Act of Texas is not payable where the death of the alleged employé results from injuries sustained in an automobile wreck on a public highway while such alleged employé is en route home in his own automobile after completing his work for the day."

The proposition is rested largely on the holding in American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949 (writ of error denied), as approved, with explanations, in Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 75. 28 A. L. R. 1402.

In the Dinkins Case, it will be noted, it plainly appeared that the employé at the time of the accident had completed his day's work and was going to his home, when he encountered injury at a point in a public street far removed from his employer's premises; whereas the proof in the instant case presents the hypothesis of unfinished work at the time of Kent's death. In the expressed terms of the contract he was required to "collect all empty drums and barrels," to preserve the same, and make disposition thereof as ordered. In performance of his work the truck, which was found overturned and covering his corpse, had regularly been used. "A 50-gallon" "metal drum" of the kind used in shipping and handling kerosene and gasoline and engine oil was found floating, partly submerged, in the ditch in the immediate vicinity of the overturned truck. A "pump * * * that he used for pumping the oil out of containers when he delivered them," and which "he had in his truck at the time

he turned over," "a wrench that he used for opening the drums," and "a 10-gallon container," apparently used as an oil or gasoline container, were "fished" out of the water by the overturned truck. "About dark Kent was seen near the warehouse and going" in the truck toward town; "after dark on the same evening, * * * about 7 p. m.," he "was seen going * * * away from the warehouse and toward the town driving his truck," and his overturned truck and his body were found about "one-fourth mile" nearer "town" than the point where he was last seen driving. In the presence of this testimony, it cannot be ruled, as a matter of law, that his work for the day was completed, or he was not about his master's business at the time the truck overturned, and hence that his death was not in the course of employment.

Accordingly we recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.