# Mrs. Delia Halliburton et al v. Texas Indemnity Insurance Company.

No. A-1683. Decided July 6, 1948.
Rehearing overruled October 20, 1948.
(213 S. W., 2d Series, 677.)

134

*Davis & McNeill* and *Dave McNeill, Jr., all of Center, Florence & Florence,* of Gilmer, and *D. S. Meredith, Jr.,* of Longview, for petitioners.

The Court of Civil Appeals erred in reversing and rendering this cause because there was sufficient evidence to raise a question for the jury with respect to whether B. B. Halliburton was an employee or independent contractor, which question the jury answered favorably to Mrs. Halliburton. Blakenship v. Royal Indm. Co., 128 Texas 26, 95 S. W. (2d) 366; Southern Underwriters v. Samanie, 137 Texas 531, 155 S. W. (2d) 359; Standard Ins. Co. v. McKee, 146 Texas 183, 205 S. W. (2d) 362.

*Edwin M. Fulton,* of Gilmer, *William C. Hancock, J. M. Slator, III, Fountain Cox & Gaines* and *Joyce Cox,* all of Houston, for respondents.

On the theory that the deceased was an independent contractor and the Court of Civil Appeals was correct is so holding, respondents cite: Industrial Indm. Ex. v. Southard, 138 Texas

531, 160 S. W. (2d) 905; Shannon v. Western Indm. Co., 257 S. W. 522; Smith Bros. & O'Bryan, 127 Texas 439, 94 S. W. (2d) 145.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

This is a workmen's compensation case filed by Texas Indemnity Insurance Company after an award by the Industrial Accident Board in favor of Mrs. Delia Halliburton and others, the widow and children of B. B. Halliburton. Mrs. Halliburton, for herself, and on behalf of her minor daughter, claimed compensation as statutory beneficiaries of B. B. Halliburton, who was killed March 23, 1944, while loading ties onto a railroad car in a tie-yard at Gilmer, Texas. All issues in the case were settled by trial stipulations with the exception of whether B. B. Halliburton and his son, E. B. Halliburton, were at the time of the father's injury and death, an independent contractor or an employee of Kirby Lumber Corporation within the meaning of the Workmen's Compensation Act.

The case was tried before a jury, and, on the basis of the stipulated facts and the jury's findings that B. B. Halliburton when injured was an employee of the assured and not an independent contractor, judgment was rendered in favor of Mrs. Halliburton and her daughters, petitioners here. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for Texas Indemnity Insurance Company, holding as a matter of law that B. B. Halliburton was an independent contractor and not an employee of the assured, Kirby Lumber Corporation. 209 S. W. (2d) 775.

Petitioners (Mrs. Halliburton and her children) assign as error that the Court of Civil Appeals erred in holding as a matter of law that B. B. Halliburton was an independent contractor and not an employee. This assignment presents the only question necessary to be decided here.

■ In determining this question the evidence must be considered in the light most favorable to the verdict (Watson v. Texas Indemnity Ins. Co., 147 Texas 40, 210 S. W. (2d) 989; Williamson v. Texas Indemnity Ins. Co., 127 Texas 71, 90 S. W. (2d) 1088) ; and if there is any evidence of probative worth tending to show that deceased at the time he was killed was an employee of Kirby Lumber Corporation, the Court of Civil Appeals erred in rendering the judgment above stated.

B. B. Halliburton and his son were partners in the business of farming and cattle-raising before and at the time of their employment by Kirby Lumber Corporation. They owned two farm tractors and other farm machinery which, in addition to being used in farm work, were used in constructing dams and terraces for various persons. They received $3.00 an hour as compensation for their work with this equipment. While engaged in such work B. B. Halliburton was approached by Smith Sanders, a representative of Kirby Lumber Corporation, about a job of loading ties for the Corporation. Ties were assembled throughout the period of employment at tie-yards adjacent to spur tracks of the main lines of different railway systems in East Texas, and spotted on the various spur tracks. Supervisors, including Smith Sanders, were stationed by the Lumber Corporation at these tie-yards. E. B. Halliburton testified as follows concerning his father's negotiations with Mr. Sanders leading to the contract:

"* * * It was Sunday morning. Mr. Smith Sanders came to my mother and inquired where we were. He * * * told us he had us a job of loading switch ties for Kirby Lumber Corporation and said they would pay $1.50 per thousand for loading. Daddy told him he never loaded, didn't know anything about it. He says 'You won't need to know anything about it. Some of us (supervisors) *will be there to show you how to do and what to do.*' * * * Daddy said he had rather not fool with it, had about all we could do at $3.00 per hour. He said he would pay us $3.00 per hour if we would go load two cars on the Center yard at the time. * * * 'All you need to know is how to work', that *they* (the supervisors) *would show us and tell us everything to do.*" (Emphasis ours).

Upon completion of the test loads B. B. Halliburton informed Sanders they would have to be paid at the rate of $2.00 a thousand feet in order to average $3.00 an hour. After making a telephone call, Sanders said they would be paid at the higher rate. He also said if any of the employees of the Halliburtons were disagreeable, he wanted to fire them. It was understood that certain rules or specifications were to be observed in loading the ties, namely that no car was to be loaded above the level of the top, ties of the same kind of wood were to be loaded together on the car, rejected ties known as "O-outs" were not to be loaded, each stack of ties was to be placed on two cross timbers on the car so as to prevent the ties from resting on the bottom of the car and no uninspected ties were to be loaded.

■ The supervisors, among other things, checked the number of ties loaded and saw to it that the above rules or specifications were followed. Whether, under the terms of the contract, the supervisory control was exercised after the cars were loaded, or while in the process of being loaded, was a controverted fact. In other words the character of control prescribed, or retained, by Kirby Lumber Corporation, was a controverted issue. The acts of control actually exercised by the supervisors were therefore pertinent in assisting a jury in determining what the contract really contemplated. Smith Sanders, one of the supervisors, testified in this connection, saying, among other things:

"I don't reckon there ever was a car that I wasn't in and out during the time he (B. B. Halliburton) was loading. * * * There has been several times when he (Halliburton) would start up with those ties that if they were fixing to slip or something that we would holler whoa or wait a minute or something like that."

He said further that he made suggestions during the process of loading, either safety suggestions or suggestions to facilitate the loading; that he called them suggestions because he (Sanders) was never dictorial about anything; that one did not have to be dictorial with Mr. Halliburton, as a suggestion was the same as an order with him. He said the supervisors wanted to see the cars were loaded right and that as a matter of fact he never made a suggestion, nor did Mr. Brinkley (another of the supervisors) ever make a suggestion in his presence to Mr. Halliburton that wasn't followed by Halliburton and his employees. He said also that one of the major details in the loading operation was getting the ties onto the gondola in a particular way and that the loading of the ties on the gondola in a certain way was as much as a part of the loading operation as their being dumped after the ties had reached the top of the skid pole; and that while he and Mr. Brinkley were in the gondola supervising the manner in which they were being loaded, Mr. Halliburton followed whatever suggestions they had to make with reference to the manner in which they were loaded.

There is evidence that they also directed the Halliburtons or their employees in matters other than those connected with carrying out the specifications, such as directing them to clean up the tie-yards, saw off the bad ends of ties, fill in deep ruts in the dirt roads leading into the yards, move the gondola cars up and down the spur track by use of a pinch bar or tractor, and to pull out a truck that was stuck in the tie yard.

The above statements contain only a small part of the evidence in the record bearing on the question under consideration; but what has been stated is sufficient to show that there is substantial testimony conflicting with that introduced by respondent in support of its contention with respect to the character of control reserved by Kirby Lumber Corporation under the terms of the contract. The testimony substantially tends to show that the supervisors gave directions and suggestions to the Halliburtons or their employees with respect to the method of loading the ties on occasions other than when the test loads were made in the Center yard, all of which were uniformly followed. These directions and suggestions dealt with fixing the gin pole to prevent it from slipping from side to side, notching the skid poles to keep them in place, digging under the stacks of ties to get a chain under them, fastening the block to the top of the gin pole, and other details connected with actual loading operations. The supervisors also called attention to mistakes being made in the loading operations, telling B. B. Halliburton or his employees what to do in the matter of rectifying same. Other evidence is to the effect that if the supervisors saw an easier or better method of loading they saw to it that this method was followed.

■ If one contracts to do a specific piece of work for another and furnishes, and has the absolute control of, his assistants, and the work is done in accord with his own ideas, or with a previously agreed plan, without being subject to the other's orders with respect to the details of the work, he is an independent contractor. However, if he and his assistants are subject to the control of the other party with respect to the details and method of doing the work then he is an employee. The supreme test is determining whether one is an employee or an independent contractor, according to our decisions and most of the modern cases, is the test with respect to the right of control. Standard Ins. Co. v. McKee, 146 Texas 183, 205 S. W. (2d) 362; Texas Reciprocal Ins. Ass'n. v. Stadler, 140 Texas 96, 166 S. W. (2d) 121; Southern Underewriters v. Samanie 137 Texas 531, 155 S. W. (2d) 359; Ochoa v. Winerich Motor Sales Co. 127 Texas 542, 94 S. W. (2d) 416; Lone Star Gas Co. v. Kelly (Com. App.), 46 S. W. (2d) 656; Southern Surety Co. v. Shoemake (Com. App.), 24 S. W. (2d) 7; Shannon v. Western Indemnity Co. (Com. App.), 257 S. W. 522; Re Murray, 170 Me. 181, 154 Atl. 352; 75 A. L. R. 725; 27 Am. Jur. pp. 486-488; 28 R. C. L. p. 762; 23 Tex. Jur. pp. 545-546 Schneider, Workmen's Compensation Text (1945), Vol. 4, pp. 16-17. In deciding this question of right of control it is necessary to examine

the evidence not only as to the terms of the contract, but also with reference to who actually exercised control of the details of the work of loading the ties onto the cars. This evidence is relevant as tending to prove what the contract really contemplated. Southern Underwriters v. Samanie, supra; Lone Star Gas Co. v. Kelley, supra; Chicago, R. I. & Pac. R. Co. v. Bennett, 36 Okla. 358, 128 Pac. 705, 20 A. L. R. 684, 725; 27. Am. Jur. p. 488; 23 Tex. Jur. p. 546.

Respondent contends that the control exercised by the assured supervisors over B. B. Halliburton and his employees was merely for the purpose of seeing that the contract was being carried out in accordance with the agreed rules or specifications, that is, for the purpose of seeing that the result achieved in loading was in accord with the specifications agreed upon. In view of the dispute over the terms of the contract, however, and the fact that there is evidence showing acts of control over details not connected or concerned with the carrying out of the rules or specifications, it was merely other evidence to be considered by the jury in deciding the nature of the relationship between respondent and the Halliburtons.

■ Another contention of respondent is that the Halliburton partnership was an independent contractor because it was paid on a quantitative basis and had the right to set their own hours of work; to select, furnish and maintain all necessary equipment; and select, employ and pay their own labor. While these are additional elements to be considered, they are not controlling. A correct understanding of the "total situation" required that the evidence and record as a whole be considered to determine who retained the right of control.

■ Since the evidence on the question of the relationship between B. B. Halliburton and Kirby Lumber Corporation is conflicting and would warrant either a finding that B. B. Halliburton was an employee or that he was an independent contractor, the Court of Civil Appeals was without authority to substitute its finding upon that question for that of the jury. Oats v. Dublin Nat. Bank, 127 Texas 2, 90 S. W. (2d) 824; Post v. State, 106 Texas 500, 171 S. W. 707; Choate v. San Antonio & Aransas Pass Ry. Co., 91 Texas 406, 44 S. W. 69. It is only "where there is no dispute about the controlling facts, and there is but one reasonable conclusion that can be inferred from such facts," that the question of whether one was an employee or an independent contractor becomes one of law and not of fact, Industrial Indemnity Exchange v. Southard, 138 Texas 531, 160 S. W. (2d) 905.

■ As observed in the beginning, the judgment of the trial court was reversed and judgment was rendered by the Court of Civil Appeals in favor of the insurer, Texas Indemnity Insurance Company. Proper assignments were made by the insurance company in the Court of Civil Appeals, not only that the verdict was not supported by any evidence, but also that the evidence was insufficient to support the verdict. The finding of the Court of Civil Appeals of no evidence tending to show the Halliburtons were employees includes the lesser finding of insufficient evidence to support such finding; and since the question of insufficiency was presented by proper assignments in the Court of Civil Appeals, the case must be remanded to the district court for a new trial. Najera v. The Great Atlantic & Pacific Tea Co., 146 Texas 367, 207 S. W. (2d) 365; State v. Gray, 141 Texas 604, 175 S. W. (2d) 224; State v. Birdette, 139 Texas 357, 162 S. W. (2d) 932; Lowry v. Anderson-Berney Bldg. Co., 139 Texas 29, 161 S. W. (2d) 459; Liberty Film Lines v. Porter, 136 Texas 49, 146 S. W. (2d) 982.

Since this case is to go back for a new trial, it is unnecessary to consider the second assignment of error presented by petitioner, relating to the action of the trial court in permitting respondent to attach its affidavit to the answer of petitioners' request for admissions after the time therefor had elapsed.

The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to the district court for a new trial.

Opinion delivered July 6, 1948.

Rehearing overruled November 11, 1948.