**TEXAS EMPLOYERS' INS. ASS'N
v. ROBISON.
No. 14328.**

Court of Civil Appeals of Texas. Dallas.
June 8, 1951.

Rehearing Denied July 6, 1951.

**340**

Leachman, Matthews & Gardere and Henry D. Akin, all of Dallas, for appellant.

White & Yarborough, Dallas, for appellee.

YOUNG, Justice.

This is a workman's compensation suit; appellee having appealed from a decision of the Industrial Accident Board, seeking to set aside a final award and to secure statutory compensation under a policy of insurance held by his employer, Alford Refrigerated Warehouses of Dallas. Upon jury findings of temporary total and partial incapacity, with judgment in accordance, Texas Employers' Insurance Association has duly prosecuted an appeal.

Robison alleged in substance that in course of his employment of blowing redwood dust or insulation into refrigerator walls, he was suddenly and without notice caused to inhale a large amount of said dust into his bronchial tubes and lungs, since which time he has suffered from a dry nonproductive cough (greatly increased upon exertion), and from irritation and infection of nerves, blood vessels and soft tissues radiating to and from the injured parts; resulting in total and permanent disability for which he is entitled to compensation at $25 per week for 401 weeks. Allegations of insurance carrier were to effect that claimant's disability was partial rather than total, and temporary rather than permanent; was due solely to disease or to a physical condition antedating the alleged accident and therefore not directly attributable to his employment.

On submission of cause to a jury (after overruling of appellant's motion for instructed verdict at close of testimony), their findings were that on or about March 4, 1949 appellee had sustained an accidental injury while working in course of his employment with Alford Refrigerated Warehouses, which resulted in total temporary incapacity to work for 208 weeks, and 75 percent temporary partial incapacity for 4 weeks from date of injury *or* from the termination of total incapacity; that there was an employee of the same class as appellee working the whole of the year immediately preceding March 4, 1949 in the same or similar employment, in the same or in a neighboring place, whose average daily wage during such period was $10; also that plaintiff's disability was not due solely to disease or solely to a physical condition in existence prior to date of the accident. Judgment was rendered on the verdict in favor of appellee in amount of $25 per week for 212 consecutive weeks, accrual date March 4, 1949, first weekly payment beginning March 11, with 6 percent interest on each weekly installment until paid, etc.

Under the first points, appellant asserts error of the trial court in the refusal of motion for instructed verdict, arguing a failure on part of plaintiff to establish the happening of an accident with resulting disability or injury within meaning of the statute, Art. 8306 et seq., Vernon's Ann. Civ.St.

The record and appellant's own summary thereof disclose that plaintiff's work involved the use of a blower and nozzle, along with others doing the same thing, in blowing insulating material called redwood dust into the walls and ceiling of a refrigerator or storage building under construction by his employer. There was much dust in the air while thus engaged and to guard against the inhaling of same, he and others similarly situated wore masks and were relieved at intervals in that part of the work. These precautions were not entirely preventive, some of the dust getting through into appellee's system; but suffering no undue effects, as he testified, until the occurrence of March 4, 1949.

On the morning of that day, while he was climbing onto a scaffold to pick up his nozzle and begin work, and before adjusting mask which was hanging around his neck, the blower machine prematurely started up with result that there was a sudden blast of air in his face; the dust thus forced into his eyes, nose, mouth and lungs being from the accumulation of redwood material covering floor of the scaffold several inches deep. The blast, developing about six inches from the platform floor, caught him in the face as he was rising from a position on hands and knees, strangling him, he falling into the redwood and signaling for the blower to stop, which was done. Appellee was corroborated in above incident by an employee who was on the same platform, also by another who stopped the blower. Immediately thereafter, he tried to get his breath, but coughing and vomiting continued until he could not carry on the work; reporting to the foreman, and sent to a doctor; that prior thereto he had never inhaled the dust to the extent that it overcame him or caused violent spells of coughing and vomiting; that during

the period following he would become weak, easily exhausted, with no energy, and with recurrences of the external upsets just related. Appellee's wife likewise testified as to development of these symptoms after the happening above detailed, and absence thereof before March 4, 1949; his medical witness giving the opinion, after examination and treatment beginning September 6, that he was suffering from bronchitis caused by inhalation of redwood dust. The foregoing evidence, without further detail, clearly raises issues embodied in the court's charge, in that it tends to establish a single sudden and wholly unexpected occurrence at a definite time and place resulting in damage or harm to the physical structure of the body; in other words, a fact situation involving an accidental personal injury of the type dealt with in Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, as distinguished from occupational diseases or disability resulting from continued exposure to known and expected conditions of employment. See also Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W. 2d 867, er. ref.; Safety Casualty Co. v. O'Pry, Tex.Civ.App., 187 S.W.2d 578, writ ref.; American General Ins. Co. v. Ariola, Tex.Civ.App., 187 S.W.2d 585.

The jury answer to special issue No. 8 (total incapacity for 208 weeks) is attacked as wholly without foundation in the evidence; appellant arguing that such finding could have been arrived at only by reaching up and pulling out of the air "a highly speculative and conjectural figure * * *." Appellee's employment record is here cited wherein he continued to work from March 4 to August 17, 1949, without losing a day, for the same employer, and (aside from two or three weeks) at the same job of redwood blowing; also pointing to testimony of Dr. Carman, defendant's medical witness, which stands unimpeached, as appellant contends, that if redwood dust had caused plaintiff's irritation, then his mere removal from contact therewith would result in a healing of the irritation and malady.

However, in the same connection, appellee testified to working only for brief

intervals with two concerns following his employment with Alford Warehouses, in activity involving no lifting or exertion; later picking cotton for a time and quitting because not able; that it made him cough, left him weak with pains in chest, and that his physical condition had not improved since termination of the earlier Alford employment. On the same issue, Dr. Hurt testified to an examination of appellee prior to the trial with findings of inflammation of bronchial tubes, the patient having paroxysms of coughing that left him weak and exhausted, running a low grade fever; that Robison had not been in condition to do manual labor "since he's been under my care," with future ability to work running from 50 percent to total incapacity. There being some evidence to say the least that appellee had been and would be incapacitated, it was well within the jury's province to estimate the duration thereof, even in absence of opinion evidence as to a specified time. "Our courts have held that in cases of this nature the duration of the disability is at best an estimate which must be determined by a jury from all of the pertinent facts before it, and although no medical expert estimated the probable time of the appellee's possible disability, such was not necessary—the jury was in a position to make its own estimate. In our opinion the evidence is sufficient to support the jury's finding * * *." Texas Employers' Ins. Ass'n v. Fletcher, Tex.Civ.App., 214 S.W.2d 873, 875, er. ref. See also National Surety Co. v. Roberts, Tex.Civ.App., 217 S.W. 2d 894, the Court there holding that the evidence supported a finding of total disability for a definite period of time, though claimant continued to work for the same employer through necessity.

Points 4 and 5 assert error of the trial court in not requiring the jury to find (1) when total incapacity commenced and (2) when partial incapacity commenced. Here must be considered the following issues of the court's charge and the jury answers thereto. "(7) Do you find from a preponderance of the evidence that such total incapacity, if any, was or is tempo-rary or permanent? Answer: Temporary. (8) From a preponderance of the evidence, how long do you find such total incapacity, if any, has continued, or will continue from the date of such injury, if any? Answer: 208 weeks. (9) Do you find from a preponderance of the evidence that Harry V. Robison's incapacity to work, if any, was or is partial for any length of time? Answer: Yes. (10) What do you find from a preponderance of the evidence was, or is, the percentage of such partial incapacity, if any? Answer: 75%. (11) Do you find from a preponderance of the evidence that such partial incapacity, if any, was or is temporary or permanent? Answer: Temporary. (12) From a preponderance of the evidence, how long do you find such partial incapacity, if any, has continued, or will continue, from the date of such injury, if any, or from the termination of the total incapacity, if you have so found? Answer: 4 weeks." Above issue 8, in particular, was objected to at the trial as too vague and indefinite "and does not set out any standard or guide to be followed by the jury as they are not confined to any specific time as to the period that such total incapacity began"; with similar objection among others to issue 12 on partial incapacity "or when it was terminated."

Appellee did not expressly plead in trial petition the date of commencement of total incapacity other than by allegations that it resulted from an injury on a certain date. There was no special exception to the pleading on such ground; in absence of which the petition must be considered as stating a cause of action, its allegations of the fact and date of injury with resulting incapacity being susceptible of the implication that incapacity began on date of injury; in the same connection, both parties tacitly agreeing that issues were raised under the record of degree and duration of Robison's incapacity and date of its commencement.

It is the well settled rule that the compensation period commences to run from date of injury, but compensation

benefits begin to accrue only from date of development of incapacity after injury. Thus the matter of commencement of incapacity is a material one and a jury question unless the evidence conclusively establishes such date. Traders & General Ins. Co. v. Watson, Tex.Civ.App., 131 S.W.2d 1103. Issue 8 as submitted and answered necessarily involved a finding on all elements submitted, one of which was duration of total incapacity, the other inquiry concerning inception thereof relative to date of injury. Whether the issue was otherwise objectionable we need not consider; the element of date of commencement was clearly presented therein; constituting a sufficient submission and finding on beginning date of incapacity as against the sole contention that there was no such submission and finding.

■ Likewise overruled is appellant's proposition arguing an absence of jury finding on commencement of partial incapacity. The contention is refuted by the form and the content of issue No. 12 and answer; and as plaintiff's counsel aptly points out: "Whatever other criticism may be made of the issue, it is certainly not subject to this objection. It contained the alternative phrase 'or from the termination of the total incapacity' and allowed the jury to find whether it was from that date or from the date of injury. The jury excluded the latter by its finding that appellee was totally incapacitated for 208 weeks from the date of injury, for total certainly negatives partial, and the answer of a given number of weeks was tantamount to a finding that the partial incapacity began with the termination of total incapacity."

Appellee, not having been employed by Alford Refrigerated Warehouses for a year preceding March 4, 1949, the court submitted the alternative provision of subdiv. 2, sec. 1, Art. 8309, Vernon's Ann. Civ.St., on wage scale; the jury finding $10 to be the average daily wage of an employee of the same class, working substantially the whole of the preceding year. These findings are challenged as wholly without support in competent evidence.

V. C. Stevens, an Alford official, testified from records showing wages paid to employees during the year before Robison's alleged injury; generally describing the building under construction as a large one, employing upward of one hundred men with different hourly rates dependent on type of work; and particularly concerning the kind of work done by one John C. Morgan, which, as appellee asserts, was similar and of the same class.

■ This witness explained that the major part of construction was walls, ceiling and insulation; that after steel forms were put up (with which work neither employee Morgan nor Robison appear to have been connected), the frame was converted into a double wall, with a 12-inch insulation space between, by crews of six or eight men each, blowing gunite (a mixture of concrete) onto the forms by means of a blower and flexible hose; that before the inside wall was completed and as it rose in height, crews of six or eight men each would put in the redwood insulation, likewise by blower and flexible hose; the first mentioned crew then sealing it over with a layer of gunite on top of the insulation when both inside and outside walls were brought to a level; and that this process of gunite and redwood insulation was going on in different sections of the building at the same time. Morgan was a workman on the gunite crew, as was appellee in redwood insulation. According to witness Stevens, Morgan's rate of pay and that of men in his class was the same as appellee's. Morgan's wage record was $2,659.10 earned in 2,568 hours, or an average of just above $1 per hour, with appellee working at about the same rate. While it may be inferred from the testimony of Mr. Stevens that on a job of this magnitude there were many other employees (plumbers, carpenters, electricians, etc.) working on different hourly scales, no such distinction in scale appears as between Morgan and appellee. To the contrary we think they may be reasonably viewed as workmen of the same class, or at least the jury was authorized to so find. "The law does not require proof

that the labor in which such other employees engaged during the preceding year be the identical work in which defendant in error was engaged at the time he received the injury. It is sufficient if the labor engaged in by them was of the same class." Traders & General Ins. Co. v. Jenkins, Tex.Civ.App., 144 S.W.2d 350, 354. In Traders & General Ins. Co. v. Yarbrough, Tex.Civ.App., 181 S.W.2d 305, a like contention was made, where claimant was employed in a foundry manufacturing soft iron, while the "other employees" were with a different employer at a foundry manufacturing hard iron, with a small difference in hourly wage rates at the two foundries, claimant working only five days per week, men at the other plant working longer. The court there held that since the evidence showed that claimant and the others were common workmen, the jury was justified in finding that they were of the same class; in other words, engaged in similar employment within purview of the statute.

■ Appellant predicates a twelfth point of error on the court's overruling of objection to jury argument of counsel for appellee; same being to effect that the Workmen's Compensation Law covered employees "in the shape they are in. If he (appellee) had something the matter with his lungs on the first, he was insured in that condition." The insurance carrier had expressly pled that Robison's incapacity was due solely to disease or to a physical condition existing prior to date of the alleged accident, and which was not directly attributable to his employment. The argument in question was obviously made while discussing these issues (19 and 20) and the court's definition of personal injury in such connection as including "any aggravation of any pre-existing disease." The objection should have been promptly sustained, since it involved a question of law beyond the jury's province. However, we are not prepared to say that the remarks complained of were other than inferences legitimately to be drawn from the court's charge as it applied to the foregoing de-

fenses and testimony bearing thereon; and in consequence the error complained of is not deemed of a reversible nature. Rule 434, Texas Civil Procedure.

Points 6 to 10 inclusive upon examination are also considered without merit; adopting as our conclusions of law appellee's several counterpoints relative thereto. Judgment of the trial court is in all respects affirmed.