**MARYLAND CASUALTY CO. v. REAL.**

No. 12355.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 19, 1951.

Rehearing Denied Jan. 16, 1952.

House, Mercer & House, San Antonio, for appellant.

Elmer Ware Stahl, A. R. Sohn, Robert B. O'Connor, San Antonio, for appellee.

NORVELL, Justice.

This is a workmen's compensation case. The controlling question is whether Emil Real, the appellee, was an employee of Leon Sand & Gravel Company, Inc., or an independent contractor at the time he was injured. The jury found that he was an employee and judgment was accordingly rendered against appellant, Maryland Casualty Company, the insurance carrier of Leon Sand & Gravel Company, Inc.

■ The appellant contends that there is no evidence supporting the jury's findings or, in the alternative, that such findings are against the overwhelming preponderance of the evidence. In order to dispose of these contentions it is necessary to review the evidence in some detail. There is some conflict in the evidence and in making the following statement we follow the rule that the evidence should be viewed in the light most favorable to the successful party below.

The capital stock of Leon Sand & Gravel Company, Inc., a corporation, is owned by Charles M. Schoenfeld (forty per cent), and his sons, C. G., Perry and Wilbur (twenty per cent each). Leon Sand & Gravel Company, Inc., mixes sand and gravel with Portland cement and sells the same as ready mixed concrete. The company owns trucks, some of them being concrete mixing trucks, which are used to deliver the mixed concrete. The company does not, however, own trucks or vehicles for the purpose of hauling sand and gravel to its plant at 319 Arbor Place in the City of San Antonio, Texas. Most of the sand and gravel used by the company is obtained from gravel pits owned by Charles M. Schoenfeld & Sons, whose owners are the same persons as those holding stock in the Leon Sand & Gravel Company, Inc. The main gravel pit of the partnership is about eight miles from the plant of the corporation and about twenty-five gravel hauling trucks are used to supply the corporation with sand and gravel in its day to day operations.

It was the practice of the company to pay fifty cents per yard for all sand or gravel hauled to the company's plant. The person employed was expected to furnish and maintain his own truck. A load generally contained four yards, so that the compensation paid amounted to two dollars per load.

Conflicting inferences can be drawn from the evidence as to the relationship between Leon Sand & Gravel Company, Inc., and Charles M. Schoenfeld & Sons. It appears that the latter firm sold sand and gravel to persons and firms other than the corporation and that the same haulers were used to make deliveries. The length of haul would determine the amount paid the truck driver for deliveries, and the city and county were zoned for this purpose. There is also evidence of cash sales made to the truck operators. The drivers would buy sand and gravel from Charles M. Schoenfeld & Sons, resell it and deliver it to such persons as they pleased. There was testimony, however, that primary attention was given to the supplying of Leon Sand & Gravel Company, Inc., with materials, and that the corporation used ninety per cent of the sand and gravel produced from the pits of Charles M. Schoenfeld & Sons. It is inferable that deliveries to other persons and cash sales to drivers were made only when there was a lull in the operations of the corporation and all of the sand and gravel that could be delivered by the trucks available was not needed. The Schoenfelds had persons at the loading pits who saw that the trucks were properly loaded, washed and leveled off, and that four yards were included in the load. When no person was available for this purpose, the responsibility devolved upon the driver of the truck. Memoranda were made of each load and its destination, whether to the company or elsewhere. These memoranda formed the basis of payments to the truck drivers which were made every two weeks by checks of the Leon Sand & Gravel Company, Inc.

The corporation undoubtedly considered that these truck drivers were employed as independent contractors upon a trip to trip basis. They were not reported as employees to the federal department of internal revenue and no social security de-

ductions were taken from payments made to them. The corporation could at any time terminate their employment by the simple expedient of refusing to load their trucks with sand and gravel. It appears that C. G. Schoenfeld was the main boss at both the gravel pits and the cement mixing plant.

The hauling of gravel and sand would commence at a time set by one of the Schoenfeld brothers or a dispatcher employed by the company. Seven A. M. was the time usually selected, but sometimes operations were commenced as early as five o'clock. Work would cease when all orders for gravel and sand for that day had been filled. The time of quitting was determined by the Schoenfelds or some executive of the company. When the Leon Sand & Gravel Company, Inc., was engaged in mixing concrete there was a constant demand for sand and gravel and the truck drivers were told to keep their trucks rolling. There was testimony that the officials of the corporation discovered that certain trucks had been losing time, and the drivers were told not to take time off for lunch but to bring their lunch with them so that they could eat without delaying operations. There was evidence that the truck drivers were told not to stop along the way for a bottle of beer or other refreshment, but were instructed to keep their trucks rolling, as sand and gravel was badly needed at the mixing plant.

There appears to be nothing in the contract under which Real was employed that differs in any way from that of any other truck driver. Perry Schoenfeld told Real that he could use another truck driver and would pay him $2 per load from the pit to the plant, and if he took a load farther than that, he would be paid extra. Real started working in February, 1946, and continued to do so until August 15, 1949, when he was injured by being struck with a truck while working at the gravel pit.

■ In order to recover under the Workmen's Compensation Act, it was necessary that Real show that he was an employee of Leon Sand & Gravel Company, Inc. By law, it is provided that, " 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written". Article 8309, § 1, Vernon's Ann.Civ.Stats. It is well settled that the term "employe" as used in the Workmen's Compensation Act does not include an "independent contractor," which term is defined as "any person, who in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522, 524.

■ It seems that the test in determining whether a person is an employee or an independent contractor is one relating to control. In Carter Publications v. Davis, Tex.Civ.App., 68 S.W.2d 640, 643, wr. ref., it is said that: "As we understand, an employer has a right to exercise such control over an independent contractor as is necessary to secure performance of the contract according to its terms and to accomplish the results contemplated thereby without thereby creating the relationship of master and servant, so long as the employer does not destroy the employee's power of initiation nor undertake to control the employee in the means and manner of the performance of the work."

In determining this issue of control, we must examine, among other things, the actual carrying out of the contract and the doing of the work. In Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677, 680, it was said that: "The supreme test in determining whether one is an employee or an independent contractor, according to our decisions and most of the modern cases, is the test with respect to * * * control. * * * In deciding this question of right of control it is necessary to examine the evidence not only as to the terms of the contract, but also with reference to who actually exer-

cised control of the details of the work * * *. This evidence is relevant as tending to prove what the contract really contemplated."

We have been cited to a number of cases involving the employment of drivers and trucks upon a quantative basis, that is, at so much per unit or per load.

In Dave Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W.2d 693, the plaintiff sued Dave Lehr, Inc., because of injuries sustained by reason of being struck by a truck driven by one Valderrano, on the theory that Valderrano was the servant of Dave Lehr, Inc. It was held that Valderrano was an independent contractor. Valderrano "owned his own truck and was engaged in the distinct occupation of a 'truck driver,' * * *. The truck drivers were paid by the load at the rate of 50 cents for the first mile and 5 cents for every quarter mile thereafter. He (Valderrano) was requested to be at defendant's place of business about 7 o'clock a. m., if he wanted to do any hauling, and was given materials to haul as orders were received or when defendant needed his services as hauler." In the course of the opinion, it was said that, "the independent quality of an agreement of employment may in practically all cases be inferred from the two circumstances that the party is engaged in a distinct and generally recognized employment, and his stipulated remuneration is to be determined with reference to some quantitative standard." The Court, however, stressed the points that Valderrano "was free to leave when he chose and return when he chose, * * * that Valderrano was not employed for any continuous service, but for specific hauls," and "that he could work when he pleased and could quit when he pleased."

In Texas Employers Ins. Ass'n v. Owen, Tex.Civ.App., 291 S.W. 940, 941, a suit under the Workmen's Compensation Act, the Amarillo Court of Civil Appeals held that the issue of whether or not D. J. Owen was a servant of the McKnight Transfer Livery & Sales Company at the time he was accidentally killed was one for the jury. Owen was one of twenty-eight truckers employed by the company to haul gravel from pit to streets located in suburban additions to Amarillo, Texas. The drivers "were instructed to be at the pit with their trucks at 7 o'clock a. m., and that work would cease at 5 o'clock p. m." The trucks were loaded in the order of their arrival with the kind of gravel, pit run or screened, desired by the company. The truck driver was given a ticket and told where to deliver the load. Upon arrival, "the company had a foreman there who measured the load on the truck, punched the ticket with the amount thereof, and directed each driver where his load should be dumped". The drivers were paid upon a mileage and load basis. Relied upon as showing as a matter of law that Owen was an independent contractor were the facts, "That the deceased was furnishing his own truck, was paid so much per cubic yard per mile, was not required to travel any specific route, nor to haul any certain number of cubic yards, nor to travel at any definite rate of speed, nor to operate his truck in any particular gear". The Court of Civil Appeals, however, rejected this contention and held that the issue of servant or independent contractor was for the jury. This position was sustained by the Commission of Appeals in Texas Employers' Ass'n v. Owen, Tex.Com.App., 298 S.W. 542, 543, wherein it was said that: "Practically the only indicium of employer and independent contractor is that the deceased owned and furnished the truck for hauling the gravel that he was engaged to deliver. But this circumstance is no more controlling than if he had insisted upon furnishing his own shovel for loading the gravel when he was otherwise employed as a common laborer by the day. There is lacking here the indispensable feature of an 'undertaking to do a specific piece of work.' There was not contemplated any completed job. It was a mere service at the will of the parties."

There seems to be some distinction in emphasis discernible between the case of Dave Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W.2d 693, wherein it is emphasized that Valderrano, the truck driver, was engaged in a distinct and generally recognized employment and was remunerated

according to quantitative standard, and Texas Employers' Ins. Ass'n v. Owen, Tex. Com.App., 298 S.W. 542, 543, wherein the emphasis is placed upon the fact that the contract of employment did not provide for an "undertaking to do a specific piece of work."

The two cases were not regarded as conflicting by the Supreme Court, which discussed both of them in Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W. 2d 359. Seemingly, the nature of the work, method of payment, furnishing of tools and vehicles, lack of agreement as to a "specific piece of work" and the like are all matters to be considered in determining the extent of the right of control of the employer. Maryland Casualty Co. v. Kent, Tex.Com.App., 3 S.W.2d 414.

The decision of the Supreme Court in the Samanie case, supra [137 Tex. 531, 155 S.W.2d 363], upon a somewhat similar fact situation, was said to be "ruled by Texas Employers' Ins. Ass'n v. Owen, Tex. Com.App., 298 S.W. 542." It was also pointed out that the Owen case, unlike the Lehr case, 127 Tex. 236, 91 S.W.2d 693 arose under the Workmen's Compensation Act.

In our opinion, the authorities discussed compel an affirmance of the judgment. The jury could have reasonably believed from the evidence that Real's contract of employment was not for a "specific piece of work," but was one under which Real was employed for an indefinite period of time to work with his truck and help fulfill the day to day need for materials of Leon Sand & Gravel Company, Inc.; that the officials of the company decided when the work should begin and when it should end; that they directed how the sand and gravel should be loaded, washed and drained, and that they likewise determined that the trucks should be "kept rolling" from the beginning time in the morning to the quitting time in the evening. From these circumstances the jury could properly conclude that the relationship between Leon Sand & Gravel Company, Inc., and Emil Real was one of master and servant rather than one of employer and independent contractor.

We overrule appellant's contentions that there is no evidence supporting the jury's findings, as well as the contention that the jury's findings are contrary to the overwhelming preponderance of the evidence. The judgment is affirmed.