**HIGHWAY CASUALTY COMPANY,**
Appellant,

v.

**W. D. REID et al., Appellees.**

No. 15880.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 21, 1958.

Rehearing Denied March 28, 1958.

Cantey, Hanger, Johnson, Scarborough & Gooch, David O. Belew, Jr., and William B. David, Fort Worth, for appellant.

Herrick, Ivy & McEntire and Robert L. Ivy, Fort Worth, for appellees.

BOYD, Justice.

This is a Workmen's Compensation case. Appellee W. D. Reid recovered judgment for compensation for total and permanent disability.

Appellant Highway Casualty Company, the insurance carrier, assigns as error the overruling of its motions for instructed verdict and for judgment non obstante veredicto because it contends that it was shown as a matter of law that appellee was an independent contractor and not an employee; the overruling of its motion for new trial on the ground that the evidence was insufficient to support either the verdict or the judgment; and that it was error to permit appellee to "get before" the jury a portion of the employer's first report of injury, claiming that such action was calculated to prejudice the jury.

■ If there was any evidence of probative force to support a finding that appellee was an employee, the court properly overruled the motions for instructed verdict and for judgment non obstante veredicto. In passing upon the sufficiency of the evidence to support such finding, we must view it in the light most favorable to the verdict. Maryland Casualty Co. v. Real, Tex.Civ. App., 244 S.W.2d 865; Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683.

Appellee testified that he had studied the laying of sheetrock and had specialized in that work. He was ordinarily paid by piecework, that is, so much per sheet. It usually took more than one person to lay sheetrock, and he and Cecil Coomer worked together. He would call Coomer his "business partner." They divided the pay equally. At one time they advertised as "Reid and Coomer, Sheetrock Specialists." They "split up" occasionally, but at the time of the injury they were working together.

Appellee and Coomer orally agreed with Walter Vincent to install sheetrock in houses being built by Vincent for 45¢ for each piece of sheetrock. They were often paid upon completion of any particular house, but at times they were paid on Fridays. Vincent deducted 3% of their compensation, which was applied on the premium for Workmen's Compensation. Nothing was withheld, however, for income tax purposes or for social security payments.

Appellee and Coomer had authority to employ other workmen to assist them in installing sheetrock in Vincent's houses. These workmen were paid by appellee and Coomer. Vincent furnished the sheetrock and nails, which material was delivered to the sites. Appellee and Coomer furnished the tools with which they worked.

According to appellee's testimony, under the contract Vincent definitely had the right to tell him how to "lay that sheetrock, whether to do it diagonally, vertically, or however he wanted it done"; if Vincent came on the job he had a right to direct appellee's activities and tell him what to do next, and how to do it if he wanted to; he had a right to discontinue appellee's services at any time he was not satisfied with the work, whether or not he was through with any particular job, and to pay appellee for the work that had been done up to that time. At times appellee was told not to put sheetrock in certain rooms, or in parts of certain rooms, or in certain parts of the bathrooms and garages; when the carpenters left "doughty studs and crooked ceiling joists and what have you," appellee would straighten that up before he would cover it with sheetrock, and for the extra time "doing something his carpenters had left, to make the job right," he was paid on an hourly basis at the rate of $2.50 to $3 per hour. "Q. All right. They never came around and would say on each thing to put four nails or five nails or any of that, would they? A. Yes, sir, they definitely did. They would tell me—you would be told either to cut your boxes closer, or put more nails here— Q. Would that be at some particular— A. In some particular instance, * * *."

■ The principal test in determining whether a person is an employee or an independent contractor is the test with respect to the right of control. Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677; Maryland Casualty Co. v. Real, Tex.Civ.App., 244 S.W.2d 865; Trav-

elers Insurance Company v. Curtis, 5 Cir., 223 F.2d 827; Standard Ins. Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362.

In Halliburton v. Texas Indemnity Ins. Co., supra, it was said [147 Tex. 133, 213 S.W. 680]: "Another contention of respondent is that the Halliburton partnership was an independent contractor because it was paid on a quantitative basis and had the right to set their own hours of work; to select, furnish and maintain all necessary equipment; and select, employ and pay their own labor. While these are additional elements to be considered, they are not controlling. A correct understanding of the 'total situation' required that the evidence and record as a whole be considered to determine who retained the right of control."

In Cunningham v. The International Railroad Co., 51 Tex. 503, the court quoted Shearman & Redfield on Negligence, sec. 73, as follows: " 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details' "; and secs. 76–79, as follows: " 'The true test * * * by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished.' " The Commission of Appeals in Maryland Casualty Co. v. Kent, Tex.Com.App., 3 S.W.2d 414, 415, made this comment: "It may appropriately be noted that Judge Bonner, in Cunningham v. Railway Co., supra, quoted section 78 of Shearman & Redfield on Negligence by way of illustration, and not by way of holding that the test therein laid down is all-comprehensive or of universal application, and that Judge Stayton, in Burton v. Galveston, H. & S. A. Ry. Co. [61 Tex. 528], supra, laid down rules which do not at all consist with that part of Shearman & Redfield's definition, wherein 'the

supreme choice, control, and direction' is required to touch 'the work * * * in all its details.' "

■ Although the evidence was conflicting, we think it not only raised the issue as to whether appellee was an employee but that it was sufficient to support the finding that he was. Maryland Casualty Co. v. Kent, supra; Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359; Texas Employers' Ins. Ass'n v. Owen, Tex. Com.App., 298 S.W. 542.

The other point complains of appellee's getting before the jury "part of the employer's first report of injury when such report is inadmissible in evidence for any purpose, such action on the part of plaintiff's counsel being calculated to prejudice the jury and make defendant object."

While Vincent was testifying on cross-examination the following transpired:

"Q. Now, when a man is hurt on one of your jobs, you have to file a report with the insurance company, do you not? A. That is correct.

"Q. And that report—A. That report, if you don't mind me telling you, was filed—

"Mr. Belew: Wait just a minute. Let him ask you the questions.

"A. Okay.

"Q. (By Mr. Ivy) That report has a place for—it says something like the name of the employee, does it not?

"Mr. Belew: We want to object to any further questions on any report—

"(Thereupon a discussion was had off the record between counsel and the Court at the bench.)

"The Court: I am going to sustain the objection. Ladies and Gentlemen, you will not consider the last statement of the witness or the question in connection with the statement with regard to any report that was made out or filed with any board by this witness."

Appellant says that this episode shows a violation of Article 8309, sec. 5, Vernon's Ann.Civ.St., which provides that "The reports of accidents required by this law to be made by subscribers shall not be deemed as admissions and evidence against the association or the subscriber in any proceedings before the board or elsewhere in a contested case where the facts set out therein or in any one of them is sought to be contradicted by the association or subscriber."

■ Appellant cites Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company v. Gloff, 5 Cir., 238 F.2d 839; Texas Employers Insurance Association v. Shiflet, Tex.Civ.App., 276 S.W.2d 942; Williams v. Texas Employers Ins. Ass'n, Tex.Civ.App., 226 S.W.2d 152; and Broomfield v. Texas General Indemnity Co., 5 Cir., 201 F.2d 746, in support of its contention that error is reflected in this proceeding. We do not think these cases are controlling here. The only objection was to "any further questions on any report," which objection was sustained. It is not shown that the report about which appellee's counsel and the witness were talking was "the employer's first report of injury," and appellant says in its brief that it was not filed with the Board. Appellee's counsel asked the witness if he had to file a report of injury "with the insurance company." Article 8309, sec. 5, prohibits the reception in evidence of "reports of accidents required by this law to be made by subscribers." Article 8307, sec. 7, requires subscribers to make reports of injury to the Board, but we do not find any provision requiring them to make such reports to the insurance carrier. Appellant also says that the court's instruction to the jury was prejudicial; but there was no objection to it and no request for a mistrial. We do not think this matter shows reversible error.

The judgment is affirmed.