PAN AMERICAN INSURANCE COMPANY,
Appellant,

v.

S. A. STOKES, Appellee.

No. 7268.

Court of Civil Appeals of Texas.

Amarillo.

June 17, 1963.

Rehearing Denied Sept. 3, 1963.

**956**

New & Townes, Denver City, for appellant.

Huff & Bowers, Lubbock, for appellee.

DENTON, Chief Justice.

This is a workmen's compensation case. Appellee, S. A. Stokes, sued Pan American Insurance Company for total and permanent disability as the result of an alleged injury sustained by him on April 17, 1961 while an employee of McDermett Liquified Gas Company. In response to special issues submitted, the jury found in favor of the claimant, and the trial court entered judgment for appellee for total and permanent disability payable in a lump sum. The insur-

ance carrier assigns as error the overruling of its motion for instructed verdict because it contends it was shown as a matter of law that Stokes was an independent contractor and not an employee; that there was no evidence, and in the alternative, insufficient evidence to support the jury verdict that Stokes was an employee of McDermett; and there was no evidence to support the finding that another employee of the same class as Stokes had worked 210 days in the same or similar employment the preceeding year.

In March of 1961 Stokes and J. W. McDermett, owner of the Liquified Gas Company, entered into an oral agreement whereby Stokes was to apply fertilizer on farms in Cochran County for the McDermett company. The fertilizing was done for customers secured by the company. The fertilizer and the equipment used to apply it was furnished by McDermett, but the tractor used to pull the special equipment was furnished by Stokes. Under this agreement Stokes was paid $1.25 per acre for his work. During one of the fertilizing operations Stokes was injured when a truck tire in McDermett's pickup blew up and knocked him to the ground.

■ In determining the question whether a claimant is an employee or an independent contractor the general rules are well established. It is the application of such rules that often presents the difficulty. Although the briefs generally cite different cases to support their respective positions, there is no real dispute as to the law of the case. The Supreme Court in Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905, sets out the essential tests relative to independent contractors as follows:

"The general rule relating to independent contractors rests upon certain recognized tests; although such tests are not necessarily concurrent with each other, nor is each test in itself controlling. Such tests are: (1) The independent nature of his business; (2)

his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job. There are other tests, but the foregoing are considered the essential tests upon which such rule is based."

However, the supreme test in determining whether one is an employee or an independent contractor is the test with respect to right of control. Standard Ins. Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362; Texas Reciprocal Ins. Ass'n. v. Stadler, 140 Tex. 96, 166 S.W.2d 121; Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W. 2d 359; Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677.

■ In deciding the "no evidence" points, the evidence must be considered in the light most favorable to the verdict, and if there is any evidence of probative value tending to show that Stokes was an employee of the McDermett company at the time he was injured, the verdict must be upheld. Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989; Halliburton v. Texas Indemnity Ins. Co., supra.

■ Stokes was a farmer by trade and had been a customer of McDermett for several years. At the time the oral agreement was entered into, Stokes had had no previous experience in applying fertilizer, but it is apparent no specilized training or extensive experience was necessary to carry out the fertilizing operation. Customers were secured through McDermett's office, and Stokes was directed to the particular farms by the company's office force. The fertilizer and the equipment necessary to apply the fertilizer was furnished by McDermett to Stokes. Stokes furnished his own tractor, and received $1.25 per acre for each acre fertilized. He reported to McDermett's office between jobs where he was directed to proceed to the next job and was given instructions as to how much fertilizer was to be applied per acre. The depth to which the fertilizer was to be applied was determined by the moisture content of the soil at the time. The amount of fertilizer varied from farm to farm according to the wishes of the owner of the land and the recommendations of McDermett's employee. To carry out these instructions the operators of the applicators were required to regulate the machines by the adjustment of certain valves and indicators on the applicator. Obviously, very little supervision was required, but there is evidence that the right of supervision and control was retained by McDermett. The fact Stokes employed one Fred Edwards to assist him in operating the machine at various times, and the fact the price was paid on the basis of acreage are facts to be considered, but they are not controlling when the whole relationship is viewed in the light most favorable to the jury finding. We conclude there was evidence to support the finding Stokes was an employee of McDermett rather than an independent contractor.

In general, the only conflict in the evidence goes to the control actually exercised by McDermett or his superintendent. The appellant contends the evidence is that Stokes was free to work at his convenience; that once he secured the fertilizer from the company he alone was responsible for correctly applying it. Stokes did not specifically contradict this testimony, but these elements do not become material in that the work must have been done within the time satisfactory to all concerned, and some supervision was actually given to the work performed by both Stokes and Edwards. The fact Stokes was not required to report for work at a specific time cannot be controlling. Obviously, it was his responsibility to correctly carry out the company's instructions. The fact remains McDermett or his authorized representative had the right to supervise and control the fertilizing operation performed by both Stokes and Edwards. McDermett owned five other fertilizer "rigs" which were admittedly operated by his employees. Except for the

method of payment, there appears to be no distinction between the manner or type of supervision or control exercised over these operators and Stokes. Although the evidence was conflicting to the extent indicated, we are of the opinion the evidence not only raised the issue as to whether Stokes was an employee, but it was sufficient to support the finding that he was. Maryland Casualty Co. v. Kent, (Tex.Com.App.), 3 S.W.2d 414; Southern Underwriters v. Samanie, Supra; Highway Casualty Co. v. W. D. Reid, (Tex.Civ.App.), 311 S.W.2d 484, (Refused, NRE).

The jury found that Stokes did not work in his employment for at least 210 days of the year immediately preceeding his injury; that another employee did so work; and that the average weekly wage of such employee was $66.66. Appellant attacks the finding concerning another employee on the ground there is no evidence to support it. In passing on this point, we are again required to apply the well-settled rule that the evidence must be considered in the light most favorable to the verdict. McDermett had five other fertilizer rigs in operation. Several of them were operated by employees who did work the whole year in other phases of the fertilizer business. The only evidence presented on the question was the testimony of McDermett which we quote as follows:

"Q Do you have or did you have in your employ during the period of time from April 17, 1960 until April 17, 1961, a person who worked for you as many as 210 days during that period of time who you did use when needed in this fertilizing operation?

"A Yes. Now, they are in the minority, of course, I want to qualify that."

The law does not require proof that the employment in which such other employee was engaged during the preceeding year be identical work in which the claimant was engaged at the time of his injury. It is sufficient if the employment engaged in by such other employee was of the same class. Texas Employers' Ins. Ass'n. v. Butler, (Tex.Civ.App.), 287 S.W. 2d 198, (Refused, NRE); Texas Employers' Ins. Ass'n. v. Robison, (Tex.Civ.App.), 241 S.W.2d 339, (Refused, NRE); Traders & General Ins. Co. v. Jenkins, (Tex.Civ.App.), 144 S.W.2d 350. We think there is evidence to support the jury finding that another employee of the same class as Stokes did work substantially the whole of the year immediately preceeding his injury.

The judgment of the trial court is accordingly affirmed.

Affirmed.

CHAPMAN, Justice (dissenting).

I respectfully dissent.

This writer would have been inclined to agree with the majority opinion before the release by the Supreme Court of Pitchfork Land and Cattle Company v. King, 162 Tex. 331, 346 S.W.2d 598. I find myself unable to agree there are any material distinctions between the instant case and that case on the question of independent contractor except that Pitchfork has stronger evidence rebutting the independence of the adjudicated independent contractor.

The majority has said " * * * the supreme test in determining whether one is an employee or an independent contractor is the test with respect to right of control * * * ", citing a number of Supreme Court cases. If that was the rule the Supreme Court had adopted before the announcement of Pitchfork, it cannot be gainsaid they departed from it in that case. Jim Humphries, Pitchfork's assistant manager, testified if he had thought he was endangering anybody's crops he would have stopped the spraying on the occasion in question. How could it be said that did not show the right to control the detail of time and progress in the spraying by Aerial Sprayers? Time and progress were very important details in that case because of the wind velocity.

In the Pitchfork case the spraying company furnished the moving vehicle for

applying the spray just as Stokes in this case furnished the moving vehicle for applying the fertilizer—the tractor. McDermett furnished the fertilizer and Pitchfork furnished at least part of the spray material. In Pitchfork the spraying company was paid by the acre and in the instant case Stokes was paid by the acre. In Pitchfork the hiring ranch determined the strength of the poison while in the instant case McDermett did not even exercise that control but the amount of the fertilizer was determined by the wishes of the farmers whose land was being fertilized. Stokes made his own decision as to applying the correct amount of fertilizer the farmers wanted by the adjustment of certain valves and indicators on the applicator.

Since this writer authored the Court of Civil Appeals opinion in Pitchfork, part of which was overturned by the Honorable Supreme Court on the independent contractor question, it might be presumed that I would not be inclined to agree with the application of that doctrine the Supreme Court opinion made to the facts of that case. Whether I do or do not is completely immaterial but I certainly recognize we are bound by it. Since we are, I cannot agree Stokes is not an independent contractor in the instant case.

The citation of the Pitchfork case by the majority in the instant case is conspicuous by its absence, and I believe with good reason; that is, the results reached in the two cases cannot be reconciled. Since they cannot, I must respectfully dissent in this case. Since Stokes was an independent contractor under the authority of Pitchfork the case should be reversed and rendered.