**TEXAS EMPLOYERS' INSURANCE ASS'N**

v.

**S. T. GATSON.**

No. 6580.

Court of Civil Appeals of Texas.

Beaumont.

March 21, 1963.

Rehearing Denied April 17, 1963.

E. A. Lindsey, Newton, Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

Barber & Seale, Jasper, Joe H. Tonahill, Jasper (amicus curiae brief), for appellee.

STEPHENSON, Justice.

This is an appeal from the judgment of the trial court awarding plaintiff 104 weeks of total disability under the Workmen's Compensation Law. This judgment was based upon a jury verdict. The parties will be designated here as they were in the trial court.

Defendant contends first that there was no evidence to sustain the findings of the jury that plaintiff was an employee of C. N. Bishop, and that plaintiff was not an independent contractor. Defendant had denied that plaintiff was an employee of defendant's insured, C. N. Bishop, and alleged that plaintiff was either an independent contractor, or an employee of Mathew Gatson, an independent contractor, and plaintiff's father. The question as to "no evidence" is a question of law and is to be tested on appeal by considering only the evidence favorable to the verdict and disregarding all other evidence.

In order to recover under the Workmen's Compensation Act, the burden of proof is upon the plaintiff to show that he was an employee of C. N. Bishop, at the time of the accident. Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522. By law it is provided that: " 'Em-

ployee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written * *." Article 8309, Sec. 1, Vernon's Ann.Civ.St.

The crux of this case is to determine who has the right to the general control of the details of the work necessary to accomplish the result contemplated by the contract. The Supreme Court made a clear statement as to the law in reference to this point in Halliburton v. Texas Indemnity Insurance Company, 147 Tex. 133, 213 S.W.2d 677, as follows:

> "The supreme test in determining whether one is an employee or an independent contractor, according to our decisions and most of the modern cases, is the test with respect to the right of control."

The proposition is also stated in Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449, as follows:

> "The relation of master and servant exists, where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished, but as well, the means and details of its accomplishment; not only what shall be done, but how it shall be done."

■ The evidence as to the contract of employment, which was oral throws little light on the question whether C. N. Bishop retained the right of control over the plaintiff. It becomes necessary in solution of the question to consider not only the terms of the contract when made, but also the evidence with reference to the control that was actually exercised, for it is relevant and admissible as tending to prove what the contract really contemplated. Lone Star Gas Co. v. Kelly, Tex.Com.App., 46 S.W.2d 656.

Mathew Gatson and three sons, including the plaintiff, S. T. Gatson, were engaged in cutting and hauling pulpwood at the time plaintiff received his injury. We find the following evidence favorable to the jury findings that plaintiff was an employee of C. N. Bishop and not an independent contractor at the time of such injury. The witness Mathew Gatson testified: C. N. Bishop asked him if he wanted to haul some pulpwood for him. That there were four in the crew hauling for Bishop, including the plaintiff. That they could not work for anyone else while hauling for Bishop. That Bishop told them the size to cut. That Bishop told them the kind of wood he wanted. "He told me haul pine one week, maybe three, four days, then tell me hardwood three or four days." That Bishop told them when to haul. That Bishop told them where to load the pulpwood. That Bishop told him at the place of loading that he wasn't loading high enough in the car. That Bishop came out to the place of loading and gave orders to each of them. That Bishop stopped them from hauling on one tract and started them on another, and did it often. That Bishop paid them $15.00 a cord for pine and $14.00 a cord for hardwood, and held out 50¢ per cord for insurance to take care of the men. That Bishop had the right to fire them, and did fire them. That from the date of the agreement between Mathew and Bishop in September, 1960, until after the date of the injury in December, 1960, they did not haul for anyone else. That Bishop told him where to get the wood during such time. When Bishop didn't want wood cut they parked the truck.

The plaintiff testified: He was 26 years old and finished the 10th grade. That Bishop hired him to haul. That after he started hauling for Bishop he didn't haul for anyone else. That Bishop told him where to haul. That some weeks Bishop told him not to haul and they parked the truck. That Bishop told him not to haul for anyone else. That Bishop told him and his father what to do. That Bishop told them how high to stack the pulpwood when loading. That Bishop told them what kind of wood to haul that day or that week.

That Bishop told them to cut on a certain tract.

Checks were offered in evidence made payable to Mathew Gatson together with the stubs, and many of such stubs showing the amount paid listed under "salary". That the same type of checks out of the same checkbook were issued to men, who Bishop admitted were his employees, as those given to Mathew Gatson.

Cross-examination of C. N. Bishop developed the following: The crews which were admittedly his employees, working on company land, owned their own trucks and saws and furnished their own gasoline for both, and Bishop did not tell them what time to go to work.

Considering all of this evidence favorable to the verdict, as this Court is compelled to do, the findings of the jury that S. T. Gatson was an employee of C. N. Bishop and not an independent contractor are supported by such evidence.

 Defendant also contends there was insufficient evidence, and that the findings of the jury were so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. In determining these points, we must consider all of the evidence, both favorable to and contrary to the verdict.

The witness Mathew Gatson also testified to the following: He and his sons went into the woods in their own truck. That they provided their own gasoline. He and his sons owned their own saws and bought their own gasoline to operate the saws. That Bishop did not tell them what time to get to the woods or what time to quit. That Bishop did not tell them how many cords to cut a day, who was to drive the truck, or who was to run the saw. That Mathew Gatson and his sons decided what days to cut, and what days to load. That the check given in payment for their work included stumpage, and they had to pay the man for the stumpage out of their check.

That Bishop did not tell them which route to take while hauling. That Mathew Gatson had been in the pulpwood business so long, no one had to tell him what size to cut. That a different price was paid by Bishop to them according to the distance hauled.

The plaintiff also testified as follows: That the checks issued by Bishop were never made out to the plaintiff. That he never saw Bishop in the woods, and Bishop told him what to do in his office in Evadale. That Bishop did not tell him what time to go to work, or what time to quit.

C. N. Bishop testified as follows: That he had a written contract with the East Texas Pulp and Paper Company to cut pulpwood upon company owned land and haul it to the mill. That he had his own employees to perform this work, and these employees were covered by Workmen's Compensation insurance. That he would also get a purchase order for additional pulpwood, not covered by the written contract, and not to be cut from company owned land. That the men cutting for him under the purchase order were not supervised or directed in their work by him. That he did not go into the woods and supervise the details of their work. That the Gatsons did not produce any pulpwood from company owned land. That Bishop had an oral agreement with Mathew Gatson, and no agreement with any of the sons. That Bishop did not supervise the work in the cutting, trimming, sawing and hauling, except in the specifications for the wood. That he did not request Mathew Gatson and sons not to sell wood for anyone else. That he did not hold out money for Workmen's Compensation or any other insurance for Mathew Gatson and his boys. That Bishop did not withhold any money from Mathew Gatson checks for social security, stumpage, insurance, or for anything. That all checks were made payable to Mathew Gatson. That Bishop did not know which tracts Mathew Gatson was cutting from. That the men which were admittedly his employees, cutting on company owned land, were un-

der his supervision and direction. That Bishop went out and showed these employees what timber to cut. That he hired the men who owned the truck, and they arranged for their own crews. That on company owned lands there were certain specifications as to the stump heights, the timber that should not be molested and falling trees, not skinning up trees. That where it was delicate to get out of the woods, Bishop directed his employees as to the route they should take.

When all of the evidence is considered, it seems to us to show overwhelmingly that plaintiff was not C. N. Bishop's employee. This case is controlled by the rule stated in Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905:

"The courts of this State have repeatedly held that an employer has the right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an employee of such company."

Applying the rules of law set out in the Southard case, and in the Security Union Ins. Co. v. McLeod case, supra, it is concluded that the various instructions given by C. N. Bishop to plaintiff and Mathew Gatson actually directed the end sought to be accomplished rather than the means and directed what should be done, rather than how it should be done. The instructions given as to the size to be cut, and the kind of wood to be cut, and where it was to be loaded and how high it was to be loaded in the car, and to haul from one tract or another, and similar orders, all must be construed as exercising such control over an independent contractor to accomplish the results contemplated by the parties.

Mathew Gatson testified that C. N. Bishop had the right to fire them, and could and did fire them. There is nothing conclusive about such evidence. The contract made between the parties was not for any specific time, and the testimony revealed that C. N. Bishop would tell Mathew Gatson, for example, that he needed 20 cords of pine this week, or 12 cords of hardwood. On cross-examination, Mathew Gatson testified that when Bishop fired them what he actually said was "He couldn't use any more wood". This testimony indicates the contract to supply the last order for wood had been completed, and no new contract was made.

Mathew Gatson testified that Bishop held out 50¢ per cord for insurance to take care of the men. This is not evidence of an employer-employee relationship as it is not customary for an employer to withhold money from an employee to pay Workmen's Compensation insurance. There is no question of estoppel involved in this case as in Southern Underwriters v. Jones, Tex.Civ. App., 125 S.W.2d 393.

The testimony as a whole shows that C. N. Bishop did not go into the woods to direct the details of the work. Plaintiff testified that after Bishop showed them a tract to cut from, he never came back. Plaintiff also testified he never saw C. N. Bishop in the woods. The finding of the jury that plaintiff was an employee of C. N. Bishop was so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

Reversed and remanded.