TEXAS EMPLOYERS INSURANCE
ASSOCIATION, Appellant,

v.

James ELAM, Appellee.

No. 6676.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 20, 1964.

Rehearing Denied March 25, 1964.

Marcus & Weller, Beaumont, for appellant.

Joe H. Tonahill, Jasper, for appellee.

STEPHENSON, Justice.

This is a suit brought under the Workman's Compensation Law. Trial was by jury and plaintiff was awarded judgment for total and permanent disability. The parties will be referred to here as they were in the trial court.

This case turns upon the question as to whether plaintiff was an employee of Coleman Cliburn, who had workmen's compensation coverage with the defendant insurance carrier. It is defendant's contention that plaintiff was employed by Field Spikes, and that Field Spikes was an independent contractor with Coleman Cliburn.

Defendant's points of error are that there is no evidence to sustain the findings of the jury that plaintiff was an employee of Coleman Cliburn, that there was insufficient evidence to sustain such findings, and that such findings are contrary to the great weight and preponderance of the evidence.

■ Under the Workmen's Compensation Act, the burden was upon the plaintiff to prove he was an employee of Coleman Cliburn, at the time of the accident. Shannon v. Western Indemnity Co., Comm. of App., 257 S.W. 522.

■ The supreme test in determining whether one is an employee or an independent contractor is the test with respect to the right of control. Halliburton v. Texas Indemnity Insurance Co., 147 Tex. 133, 213 S.W.2d 677. Under the evidence in this case, did Coleman Cliburn have the right to control the work of plaintiff, or did Coleman Cliburn enter into an independent contract with Field Spikes and was plaintiff an employee of Field Spikes?

■ The evidence as to the oral contract of employment is sparce and throws little light on the question as to whether Coleman Cliburn retained the right of control over plaintiff. It becomes necessary in solution of the question to consider not only the terms of the contract when made, but also evidence with reference to the control that was actually exercised, for it is relevant and admissible as tending to prove what the contract really contemplated. Lone Star Gas Co. v. Kelly, Texas Comm. App., 46 S.W.2d 656.

■ We first consider the question of "no evidence", a question of law, by looking only to the evidence favorable to the findings of the jury. The plaintiff testified to the following: Field Spikes came to plaintiff's house and told plaintiff Coleman Cliburn wanted a truck driver. Plaintiff and Field Spikes talked to Coleman Cliburn in the woods the next day, and Coleman Cliburn hired plaintiff to drive a truck for which he agreed to pay plaintiff $2.00 per load. Plaintiff frequently saw Coleman Cliburn in the woods on the job where plaintiff was loading and hauling pulpwood. Coleman Cliburn gave plaintiff instructions with reference to how he worked. Coleman Cliburn gave plaintiff orders how to handle the truck, not to tear them up, not to haul anybody and to limit the speed from 30 to 35 miles per hour. Coleman Cliburn told plaintiff to cut brushes and things to fix the road so they could get in and out. Coleman Cliburn didn't want the pulpwood cut too small or the timber cut too close. Coleman Cliburn paid plaintiff in cash at his office in Newton. Coleman Cliburn furnished plaintiff transportation to and

from the job, by letting plaintiff drive the truck home at night with orders not to touch it until the next morning. Coleman Cliburn came out to the job the morning plaintiff got hurt and said they were cutting a little too close.

Roy Lee Ashworth testified to the following: Roy Lee Ashworth worked with plaintiff for Coleman Cliburn. Coleman Cliburn showed them what kind of timber to cut, and told them right from wrong. Coleman Cliburn came out to the job where plaintiff was hurt. Coleman Cliburn was Field Spikes' and plaintiff's boss.

Roy Lee Palmer testified as follows: He worked with plaintiff and Ashworth for Coleman Cliburn. Coleman Cliburn came to his home and hired him and gave them instructions how to cut. They should not cut warped trees and should not cut too low. Not to get on the line or cut marked trees, or trees that were too dead. Coleman Cliburn walked around the woods and told them what to cut and what not to cut. Roy Lee Palmer felt he had to follow Coleman Cliburn's order or be fired. All of this evidence supports the findings of the jury.

■■■■ In determining the points as to the sufficiency of the evidence to support the findings of the jury as to employment, and the contention that such findings were against the great weight and preponderance of the evidence, we consider the entire record.

Coleman Cliburn testified to the following: He is a pulpwood dealer and had been since 1951. As such, he bought pulpwood from subcontractors and sold it to the East Texas Pulp & Paper Co. Also, he had a contract to cut wood from company land and delivered it to the mill at a stipulated price per cord. Under the terms of his contract with the mill he carried compensation insurance to cover the men while working on company land. Once a week he would get an order from the mill for the number of cords to cut from company land, and also a supplemental order for outside wood. On company land the order designated the type of wood to cut as well as the place such wood is to be cut. The supplemental order designated no source for obtaining outside wood. He owned no trucks or equipment of his own, so all orders were filled by subcontractors. A subcontractor has to either own or have a truck available, and has to have a sufficient number of workers to cut, load and haul the wood. He made the arrangements with his subcontractors and had ten in 1961, who were paid a stipulated amount per cord for cutting, loading and hauling wood to the mill. On "outside wood" the subcontractor is paid according to the number of cords, with no social security or withholding and the only deduction being stumpage which is a stipulated amount per cord paid to the landowner. The owner of the truck paid the upkeep, gasoline, oil, cost of repairs and cost of tires. His records indicated Field Spikes was paid for 19.73 cords of "outside wood" during the week the plaintiff was injured. It was up to Field Spikes to pay all of the expense on his truck out of the money he received. Coleman Cliburn had no interest in the truck. The first time he noticed the plaintiff was about a week before plaintiff's injury. He did not hire the plaintiff, and did not pay plaintiff any money. He did not know whose wood was being cut when plaintiff was injured, and did not go down to where the tract was located. He had no right of control or supervision over men working on outside land, and did not in any way attempt to supervise them.

Walter Lavine testified to the following: He was in the general timber business. He was acquainted with people who owned tracts of pulpwood they wanted to sell and also acquainted with people who wanted to buy pulpwood. He had arranged to sell Field Spikes pulpwood from time to time. Field Spikes contacted him in May 1961 and told him he was looking for some outside wood. He had charge of some land for the Claybars in Orange County, and showed it to Field Spikes and made the ar-

rangements for it to be cut. He didn't know Coleman Cliburn, had never spoken to him, and had no contact with him about this timber.

Field Spikes testified as follows: he had been in the pulpwood business from 1955 until June 1961 when his truck burned. He did contracting or subcontracting and hauled for himself. He started with Coleman Cliburn about Christmas 1960. To get into the hauling business you had to have your own truck and crew which generally consisted of 3 men. You also had to have saws and axes. When cutting company wood they tell you where to go, but for individual wood you have to hustle it yourself. He hired the plaintiff to work for him around the first of April. Roy Lee Palmer told him plaintiff was a good driver. He told Roy Lee to tell plaintiff to be ready the next morning and he picked plaintiff up. They talked it over as they were going along and he told plaintiff he would pay him $2.00 per load. While plaintiff was working for him, he got an order from Coleman Cliburn for some outside wood. He called Mr. Lavine and was told he could get some wood. They drove by Mr. Lavine's house Monday morning and he took them out and showed them the tract. Roy Lee Ashworth did not work for him in Orange County, and had not for around two weeks. Coleman Cliburn paid him by the cord, each Friday, according to the number of cords hauled. It was his truck and Coleman Cliburn had no interest in the truck, and had not helped him finance it. He had to bear all of his own expense on his truck. He was paid no salary. Plaintiff did not ever go to Coleman Cliburn's office with him. Coleman Cliburn had nothing to do with hiring Roy Lee Palmer or any of his men. He provided his own gasoline for his saws. While they were working on the Claybar tract in Orange County in May 1961, Coleman Cliburn did not tell them what time to get out to the woods or what time to quit, how many cords to cut, who had to run the truck, who had to run the saw or which day to work. Coleman Cliburn did not come out to the land in Orange County, and did not know which tract they were cutting on.

The plaintiff also testified as follows:

"Q. How did you happen to go to work for Mr. Coleman Cliburn, this gentleman sitting back here?

"A. Well, Field Spikes came up to my house and told me he wanted a truck driver, Mr. Cliburn wanted a truck driver. And Fields, he said he was buying a truck and so he came up to the house one evening and I told him I would go to work for him the next day.

"Q. All right, did you and Field go see Mr. Cliburn the next day?

"A. We saw him in the woods the next day, yes, sir.

"Q. Did you talk to him about going to work for him?

"A. Yes, sir, because I wouldn't work for Fields Spikes—

"Q. I mean, did you talk to him?

"A. Yes, sir.

"Q. What kind of deal did you make with Mr. Cliburn?

"A. Just so I could get my money from Mr. Cliburn because I knowed Fields didn't have any more than I did.

"Q. Who hired you?

"A. Fields come out there, but Mr. Cliburn is the one with the money.

"Q. Well, who hired you, Mr. Cliburn?

"A. Yes, sir."

Plaintiff also testified to the following: Coleman Cliburn would give the money to Field Spikes, and Field Spikes would give

it to him. The reason he knew Coleman Cliburn bought the wood was because Field Spikes wasn't able to buy it, so Coleman Cliburn had to. He agreed with Field Spikes to drive the truck for $2.00 per load, but he wanted to know where the money was coming from. In reference to his testimony about Coleman Cliburn meeting them on the road and telling them where to go, plaintiff testified as follows:

"Q. What was this conversation you said took place out there by Jones' Store?

"A. I said Mr. Cliburn would meet us out there and tell us where to go to the timber.

"Q. He would meet you out there and tell you where to go?

"A. Yes, sir.

"Q. Did you hear the conversation?

"A. I would be out there. I wouldn't hear exactly what he would tell him, no, sir.

"Q. Then, you don't know what was being said, do you?

"A. No, sir, but I would know where we would go."

There is reference to Coleman Cliburn coming out to the job the day of the injury, plaintiff testified as follows:

"Q. James, all the records show that your injury was May 8, 1961, here in Orange County below Mauriceville. Before you got hurt that morning did Mr. Cliburn come out there on the job?

"A. No, sir, the day after.

"Q. Did he come the day you got hurt, the morning before?

"A. No, sir."

Roy Lee Ashworth also testified as follows: Coleman Cliburn did not hire him but he was working for him. He was working for Field Spikes but the money was coming from Coleman Cliburn. Field Spikes hired them, but Coleman Cliburn was the businessman and contractor. Field Spikes was their boss, but still the money was coming from Coleman Cliburn. Field Spikes paid him in cash. To his idea he was working for Field Spikes. Field Spikes furnished the gasoline for the truck, and for the saws. Coleman Cliburn did not tell him what time to go to work and what time to quit. He had never spoken a word to Coleman Cliburn in his life.

■■ A consideration of all of the testimony shows the timber being cut, at the time plaintiff was injured, was not on "company land" but on the Claybar property. It is uncontroverted that Field Spikes arranged with Walter Lavine for this timber, and that Coleman Cliburn had nothing to do with the arrangements. All of the · testimony shows that Field Spikes owned the truck and was solely responsible for its operation and maintenance, and also that Roy Lee Palmer owned the saw. The real tenor of the plaintiff's testimony showed that Field Spikes was his employer, and he was looking to Coleman Cliburn as a source of the money. When plaintiff was asked who hired him, he replied:

"Fields come out there, but Mr. Cliburn is the one with the money."

It is argued by counsel for plaintiff, that the testimony of Roy Lee Palmer, Roy Lee Ashworth and the plaintiff, proved that Coleman Cliburn had the right of control over the plaintiff. We have concluded this testimony, in its best light, demonstrates no more than Coleman Cliburn giving instructions as to what should be done, rather than how it should be done. The facts and circumstances in this case are similar to those in Texas Employers Insurance Association v. Gatson, Tex.Civ.App., 367 S.W.2d 168, and both cases are controlled by the rule stated in Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905, in which case it is said:

"The courts of this State have repeatedly held that an employer has the

right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an employee of such company."

The only control exercised by Coleman Cliburn in this case was that necessary to accomplish the results of a contract entered into with Field Spikes. The findings of the jury that plaintiff was an employee of Coleman Cliburn, that Coleman Cliburn had the right to control plaintiff's work, that plaintiff was not an employee of Field Spikes and that Field Spikes was not an independent contractor, are all so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

Reversed and remanded.